(65 N. W. Rep. 694.)

---

## F. L. SYKES *vs.* G. S. HANNAWALT.

Opinion filed November 29th, 1895.

**Chattel Mortgage of Future Earnings.**

> In this state it is competent for the owner and operator of a "threshing rig" to mortgage the future earnings thereof.

**Filing.**

> But such mortgage must be filed for record in the same manner as a mortgage upon any other personal property, and, if not so filed, it is void as against a creditor of the mortgagor who became such in ignorance of the existence of the mortgage, after the same was executed, and before it was filed for record, relying upon the mortgagor's apparant ownernership of such earnings.

Appeal from District Court, Walsh County; *Templeton*, J.

Action by T. L. Sykes against G. S. Hannawalt. Judgment for plaintiff, and defendant appeals.

Reversed.

*DePuy & DePuy*, for appellant.

*Phelps & Phelps*, for respondent.

BARTHOLOMEW, J. Both parties to this action claim the right to an amount of money that was due from one Kennedy for threshing performed for him in the fall of 1893. The threshing was done by one Fred Schimming, with a machine owned by him. Defendant and appellant, Hannawalt was hired by Schimming, and worked for him in threshing a portion of that season, including the threshing done for Kennedy. Schimming failed to pay Hannawalt for such labor, and Hannawalt brought suit in Justice's Court to recover the amount, and, having obtained judgment, execution was issued and levied upon the balance in Kennedy's

hands due on account of the threshing. Kennedy, having received notice from plaintiff's agent that plaintiff claimed the amount by assignment from Schimming, did not pay over the money on the execution, but gave the officer a receipt therefor, and retained it. Subsequently plaintiff sued Kennedy in Justice's Court, claiming the amount as assignee of Schimming. Kennedy paid the money into court, and on application Hannawalt was substituted as defendant, and came in and answered, setting up the facts already stated as constituting his right to the money. He was unsuccessful in the Justice's Court, and appealed to the District Court, where he was again unsuccessful, a verdict being directed against him. The learned trial court based its ruling upon what is believed to be the superior rights of respondent to the money, as shown by the undisputed facts in the case. Respondent claimed to be the owner of the account against Kennedy under a written contract as follows: "This agreement, made and entered into this 19th day of August, A. D. 1893, by and between Fred Schimming, of Minto, Walsh County, and State of North Dakota, party of the first part, and T. L. Sykes, of the City of Fargo, County of Cass, and State of North Dakota, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sale to him of one 14-horse Gaar-Scott traction engine and one 40x60 Advance separator by the said party of the second part, hath given his certain promissory notes, executed and delivered to second party by the said party of the first part, and further acknowledges that there is now owing and unpaid on said promissory notes made, executed, and delivered by him, the said party of the first part, unto the said party of the second part, in payment for the engine and thresher above mentioned, the sum of $825, and interest in accordance with the provisions of said notes. Now, therefore, for the purpose of better securing the payment of said confessed indebtedness and interest thereon, and in addition to such other securities as may have been heretofore given, the said party of the first part doth hereby grant, bargain, sell, and mortgage unto the

said party of the second part all and singular the earnings of the aforesaid threshing rig, which said threshing rig is now owned by and in the possession of the said party of the first part, and hereby agree to run the said threshing rig faithfully and economically from the beginning to the close of each threshing season, during the continuance of this agreement. And the said party of the first part further stipulates and agrees that he will act as the agent of second party in the matter of obtaining a settlement of each job of threshing done, said settlement to be made upon blanks furnished by the said second party, and, after been accepted by the person for whom the job of threshing was done, to be by the said party of the first part turned over to Ralp Welch for collection, for the account of the party of the second part; and as such agent the said party of the first part shall act for and in behalf of said party of the second part in a fuduciary capacity, and not otherwise. Now, the conditions of this agreement are such that when the said second party shall have received in cash at his office in Fargo, N. D., from the moneys collected from the earnings of the said threshing rig during the season of 1893, the sum of $425 and interest, to be applied by them upon the aforesaid indebtedness, then and in that case they, the said second party, will assign and turn over to the said party of the first part all uncollected accounts and cash then remaining in the hands of the said Ralph Welch, and in like manner in the year 1894, when they shall have so received a further sum of $400 and interest; and in like manner in the year of———, when they shall have received the further sum of $———and interest; and in like manner in the year 189—, when they shall have received the further sum of $———and interest. It is further agreed and understood that the said second party is not, under any circumstances, to be held liable for any expenses incurred in the running of said threshing rig, or in the collection of the aforesaid threshing accounts. It is further understood and agreed by and between the parties hereto that nothing contained in this agree-

ment shall be construed as altering, changing, or abrogating in any manner whatever the existing obligations of the said party of the first part to the said party of the second part, and that in all its provisions it is to be considered as collateral to said obligations. It is distinctly agreed that the said party of the first part shall acquire no title to the earnings of said machine, but that they are and shall be the property of the said party of the second part until assigned to the party of the first part, in accordance with the provisions of this agreement. In witness whereof the said party of the first part hath hereunto affixed his hand and seal this 19th day of August, A. D. 1893. Fred Schimming. Witnesses: Lawrence Heerey, R. B. Welch."

This paper was never filed for record. What is the legal force and effect of this contract? It is an assignment absolute or conditional and by way of security? And, if conditional, is it a pledge or mortgage? There are terms in the instrument indicating by strong language that 'the accounts, when earned, were to be the absolute unqualified property of respondent, and his counsel urge that point with tenacity, and we gather from the record that such was the view of the trial court. But the language in the contract cannot prevail against the statute. Section 4348, Comp. Laws, reads as follows: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to deemed a pledge." If this instrument had any effect whatever, it was a transfer of an interest in property. True, the property was not then in *esse*, but as an executory agreement of sale it might be made effectual under section 3258, Comp. Laws, and under section 4328, if a mortgage, the lien would attach when the property came into existence. But, being a transfer of an interest in property, and it being perfectly clear from the whole instrument that whatever interest was transferred was so transferred as security for the payment of an existing debt owing by Schim-

ming to the respondent, whatever terms may have been used, the instrument was in fact a security only, and must be a mortgage or a contract of pledge. It is idle to say, that respondent retained the title to the earnings when he sold the machine. He never had title to such earnings, and a party cannot retain that which he never had. When the earnings accrued, the machine belonged to Schimming, and was operated by him, and the earnings necessarily belonged to him, except as his ownership was qualified or restricted by the written instrument. We are clear that the contract gave respondent no absolute title to the accounts. Schimming might have paid his debt to respondent at any time, and in that event he would have put an end to all claim of respondent to the accounts; hence whatever interest was transferred to respondent was so transferred as security, and not otherwise. But it is more difficult to determine the exact nature of that security. The statute declares that a transfer for security "is to be deemed a mortgage except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge." In this case the property transferred was an interest in choses in action not in *esse*. Had the accounts been then in actual existence, there is authority for holding that a written assignment by way of security is equivalent to the delivery of possession, because the property is intangible, and not susceptible of manual delivery; or perhaps it were better to say that the authorities hold that choses in action by reason of their intangible nature cannot be pledged without a written assignment, because a pledge is dependent upon possession. *Brewster* v. *Hartly*, 37 Cal. 15; *Wilson* v. *Little*, 2 N. Y. 443. But we find no case holding that such property may not be mortgaged if the parties so intend. An assignment of choses in action for security was held a mortgage in *Preston Nat. Bank* v. *George T. Smith Middlings Purifier Co.*, 84 Mich. 364, 47 N. W. 502; *Kirkland* v. *Brune*, 31 Grat. 127; *Tingle* v. *Fisher*, 20 W. Va. 497; *Bacon* v. *Bonham*, 27 N. J. Eq. 209; *Williamsen* v. *Railroad Co.*, 26 N. J. Eq. 398. And in *Manufacturing Co.* v. *Robinson*, 83

Iowa, 567, 49 N. W. 1031, the court specifically held that threshing accounts, not yet in existence, might be mortgaged. Our statutes authorize the giving of a mortgage on property not in existence (section 4328, Comp. Laws,) and we have expressly given effect to this statute. *Bank* v. *Mann*, 2 N. D. 456, 51 N. W. 946; *Hostetter* v. *Elevator Co.*, 4 N. D. 357, 61 N. W. 49. There is nothing inherent in the nature of choses in action that would prevent a mortgage thereon if the parties so intended. Of course, at common law, property not in *esse* could be neither mortgaged nor pledged. Our statute has swept away the rule as to mortgages. But it is silent on the point as to pledges for the all-sufficient reason that an actual transfer of possession is necessary to a valid pledge, and possession cannot be predicated upon that which does not exist. Nor would the contract be good as an agreement to pledge. An agreement to pledge certain specific articles to be thereafter manufactured would constitute no lien upon such articles when manufactured. To create the lien the article must be placed in the possession of the pledgee after they are manufactured. The same would be true of the accounts. If it be claimed that possession thereof is transferred by assignment, still such assignment must be made after the accounts have an existence. Nothing of that kind was ever done; hence, on the theory that the contract was intended as a pledge, respondent would have no lien upon or right to the money here in controversy. His counsel insist, however, that if the instrument be construed as a mortgage, still respondent's rights are superior, because mortgages of choses in action do not come within the registry acts. This has been so held in several cases. *Preston Nat. Bank* v. *George T. Smith Middlings Purifier Co.*, *supra*; *Marsh* v. *Woodbury*, 1 Metc. (Mass.) 436; *Kirkland* v. *Brune*, *supra*; *Gettinger* v. *Bank*, 3 W. Va. 317; *Williamson* v. *Railroad Co.*, *supra*. That these cases were correctly decided does not admit of doubt, and yet we think they are without force as precedents in this jurisdiction by reason of peculiarities of our statute law. These cases state generally that registry is intended as a

substitute for change of possession, and is necessary only where property is capable of manual delivery, and, as there can be no manual delivery of choses in action, a. mortgage on that class of property need not be recorded. The statutes under which these decisions were rendered declare generally that a mortgage of goods and chattels shall be void as against creditors, and so forth, unless recorded, or unless followed by an immediate and permanent change of possession. Our statute is different. Section 4379, Comp. Laws, reads: "A mortgage of personal property is void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property in go:d faith for value, unless the original, or an authenticated copy thereof, be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." It will be noticed that th's statute recognizes no such thing as a mortgagee in possession. There can be no such thing under our law, because, if possession be transferred to him contemporaneously with the execution of the instrument, he is not a mortgagee, but a pledgee, under section 4348, already quoted, and must proceed under the statute relating to pledge, and not under the statute relating to chattel mortgages. Of course, a mortgagee may take possession after condition broken, or for the purposes of foreclosure, without thereby becoming a pledgee; but, if the written instrument be accompanied by an actual transfer of possession, the transaction is a pledge. In a general sense, it is true in this state that registration takes the place of possession. A person in possession of personal property as security need not record a mortgage thereon in order to enforce a lien. It was in this general sense that this court said that registration was a substitute for possession in *Bank* v. *Oium*, 3 N. D. 193, 54 N. W. 1034; but under the statute already quoted registration is absolutely necessary to the validity of a chattel mortgage as against creditors, etc., hence the reasoning in the above cases is entirely inapplicable here.

But there is yet the further reason why such cases are not

authority here. They were decided under statutes which speak of a "mortgage of goods and chattels," and, while some of the cases say that the word "chattels" might include choses in action, yet, as it is used in immediate connection with the words "actual. possession,"—a condition which cannot be asserted as to choses in action,—therefore the word must be understood in a more restricted sense, and must exclude whatever is not visible, tangible, and capable of manual delivery. Now, our statute says, "a mortgage of personal property is void." etc. There are no exceptions if the mortgage covers personal property. Section 2679, Comp. Laws, defines real property, and section 2683 declares that "every kind of property that is not real is personal." Section 6973 reads as follows: "The term 'personal property' includes every description of money, goods, chattels, effects, evidences of right in action, and written instruments by which any pecuniary obligation; right or title to property, real or personal, is created or acknowledged, transferred, increased, defeated, discharged or diminished." Under these statutory definitions choses in action are personal property, and a mortgage thereon is a mortgage of personal property, and comes within the express letter of the statute. That it comes within the reason of the statute will not admit of doubt. The object of the statutory requirement is to prevent injury and loss to innocent persons, who, on the strength of apparent ownership, have been led to extend credit or change their position to their detriment, as fully set forth in *Bank* v. *Oium, supra.* To a person at all conversant with the manner in which threshing is conducted in this state it will be plain that in these cases, of all others, it is necessary, in order to protect innocent persons, that the mortgages be of record. A man who owns and operates a threshing engine and separator hires his threshing crew,—the entire complement of men and teams necessary to conduct a threshing business in the marvelous manner that steam power has made possible. His expenses are enormous, but his earnings are large. Very few men, indeed, could command the credit incident to such a business, but for the

certainty that their daily earnings would meet their expenses. Hundreds of thousands of dollars are earned every fall in this state by laboring men employed in these threshing crews, who rely exclusively for their pay upon the fact that their employer is earning from day to day the money with which to pay them. Could that employer, by some secret and unrecorded mortgage, place those earnings beyond the reach of the laborer whom he employs, and who relies upon those earnings for his compensation, he would be able to entail great loss upon that class of the community least able to bear it. If we thought such were the law, we would regard it as a subject for early legislative action. But such is not the law in this state. Mortgages upon the earnings of a threshing machine must be filed for record in the same manner as mortgages upon any other personal property. This mortgage never was recorded. Appellant, in ignorance of its existence, performed the labor for Schimming for which he seeks to hold this money. He relied upon Schimming's apparent ownership of the earnings of the machine. He would not have performed the labor or extended the credit had he known of the mortgage. He comes clearly within the conditions specified in *Bank* v. *Oium*. As to him, the mortgage was void. It was, perhaps, void also by reason of the uncertainty in the description; but that point is not raised. In holding that it was competent for the owner and operator of a threshing machine to mortgage the future earnings of such machine, we must not be understood as intending to hold that the accounts due from the farmers to the person operating the machine necessarily represent such earnings. Such accounts usually, in this state, represent not only the earnings of the machine, but also the earnings of a large number of men and teams used in conducting the business of threshing. A description such as we find in the instrument in this case, to-wit, "all and singular the earnings of the aforesaid threshing rig," would not cover the earnings of the men and teams.

Some technical objections are made as to the sufficiency of the evidence to entitle appellant to the money in any event. We

have examined the evidence, and, remembering that verdict was directed against appellant, and that hence we must regard every fact as established that his evidence tends to prove, we think the objections not well taken.

The trial court will reverse its judgment, and order a new trial. All concur.