FLANDERS v. FRENCH et al.

The owner of a threshing machine may mortgage the future earnings of the same, as against earnings of laborers employed in running the machine, provided the intent of the mortgagor to mortgage all of such earnings, including the wages of employes, is clearly shown by the mortgage, and the description of the mortgage is sufficiently definite, and the time and place within which the earnings are to accrue are sufficiently specified.

The purchaser of a threshing outfit executed a chattel mortgage to the seller to secure a part of the price, describing all the mortgagor's title to all earnings and proceeds, whether in the form of money, notes, orders, or accounts, to be earned by the mortgagor with the threshing outfit during the seasons of 1903 and 1904 in certain counties. The mortgage specifically described the threshing machine, and provided that the mortgagee should deliver to the mortgagor 40 per cent. of all earnings turned over, either in cash, threshing orders, notes, or accounts, pro rata, according to the amount having been paid to the mortgagee to be used by the mortgagor for the payment of the running expenses of the machine, etc. **Held**, that such mortgage was not invalid for failure to sufficiently describe the future earnings intended to be mortgaged.

(Opinion filed, January 10, 1906.)

Appeal from Circuit Court, Day County. Hon. J. H. McCoy, Judge.

Action by Archie Flanders against Minard P. French, in which Clayton Jones was garnished and M. R. Baskerville intervened,

claiming the fund attached under a chattel mortgage. From a judgment in favor of plaintiff, intervener appeals. Reversed.

*Sears & Potter* and *C. C. Bush,* for appellant.

An agreement can be made in this state to create a lien upon property not yet acquired by the lienor or not yet in existence. Civ. Code Sec. 2024. Sykes v. Hannawalt, 65 N. W. 682. Earnings under an existing contract may be assigned. Payne v. Mobile, 4 Ala. 333; Fields v. New York, 6 N. Y., 179, 57 Am. Dec. 435; Devlin v. New York, 63 N. Y. 8; Hall v. Buffalo, 1 Keyes 193; People v. Dayton, 50 How. Pr. 143; Emery V. Lawrence, 8 Cush., 151; Macomber v. Doane, 2 Allen 541; Boylen v. Leonard, Id., 407; Taylor v. Lynch, 5 Gray 49; Lannen v. Smith, 7 Gray 150; Weed v. Jewett, 2 Met. 608, 37 Am. Dec. 115; James v. Newton, 2 New Eng. Rep. 820, 142 Mas. 366; Garland v. Huntington, 51 N. H. 409; Hawley v. Bristol 39 Conn. 26; Augur v. New York Belting & P. Co., 39 Conn. 526; Haynes v. Thompson, 6 New Eng. Rep. 80, 141 Me. 125; Ruple v. Bindley, 91 .Pa. 296; McManaman v. Hanover Coal Co., 9 Kulp. 181; State Bank v. Hastings, 15 Wis. 83; Civil Code Sec. 2047.

*C. A. Wells* and *B. A. Walton,* for respondent.

An agreement can be made in this state to create a lien upon property not acquired by the lienor, or not yet in existence; but in order that there may be an assignment of future earnings it is essential that the expectation of such earnings shall be based upon an existing contract of employment, as without such contract there cannot be any valid assignment, either in law or equity, of wages and salary to be earned in the future. Cyclopedia of Law and Procedure, Volume 4, page 28. Kent's Com. 14th Edition, Volume 2, page 400. There is nothing in the mortgage to show a manner by which his sixty per cent is to be separated from the remaining forty per cent or by which it may be determined, and for that reason alone the instrument is certainly void for uncertainty. Jones on Chattel Mortgages, 4th Edition, Section 56. Cobbey on Chattel Mortgages, Section 182. Cass v. Gunnison, 25 N. W. 52; Fowler v. Hunt, 48 Wis. 345; Blakely v. Patrick, 12 Am. Rep. 600.

CORSON, J. This is an appeal by the intervener from a directed verdict and judgment entered in favor of the plaintiff. The

action was brought by the plaintiff to recover for services perform-ed by himself and team for the defendant French, who was engaged in running a threshing machine, and Clayton Jones, the other de-fendant was garnisheed as a debtor to French for certain threshing performed for him. Baskerville, the intervener, claimed to be the owner of the indebtedness due from Jones to French under and by virtue of a chattel mortgage contract executed by said French the defendant to him, purporting to cover the earnings of the said ma-chine for the years 1903 and 1904 in certain parts of Day and Rob-erts counties. The intervener's alleged chattel mortgage was ex-cluded by the court, and a verdict directed in favor of the plaintiff.

The learned circuit court, in directing a verdict, instructed the jury as follows: "The court being of the opinion that the interven-er, M. R. Baskerville, could not recover upon his complaint in in-tervention in this case for the reason the mortgage upon threshing earnings is so indefinite and uncertain as not to amount to a mort-gage at all, the court therefore directs a verdict in favor of the plaintiff." The question presented for the court's decision is as to the sufficiency of description in the chattel mortgage so executed by French to the intervener, Baskerville.

The amount due from French to the plaintiff for his work and labor was conceded. That Jones was indebted to French in the amount claimed for threshing was also conceded. The execution and recording of the chattel mortgage in the manner required by law was not questioned. The so-called chattel mortgage contract is in words and figures as follows, to-wit: "That the undersigned, * * * party of the first part, being justly and lawfully indebted to M. R. Baskerville, party of the second part, in the sum of fourteen hundred dollars principal and interest thereon, according to the con-dition of notes described as follows: * * * Now, therefore, for the purpose of better securing said notes and any and all renewals of extensions of said notes, or any part thereof, and in addition to such security as has been heretofore given, the said party of the first part does hereby grant, bargain, sell, assign, transfer and set over unto the party of the second part, * * * all the right, title and interest of said party of the first part to all earnings and proceeds, whether in the form of money, notes, thresh orders, or accounts, to be earned

by us and with our threshing outfit for all threshing done during the seasons of 1903 and 1904, meaning and intending hereby to sell, assign, mortgage and transfer unto the party of the second part the entire earnings during said time in the territory hereinafter designated, with that certain new rig now owned by said party of the first part and described as follows, to-wit: One Advance traction strawburning engine, 22 horse power, shop No. 4,851, one Advance separator, size 40 by 60, shop No. 11,575, with all attachments, fixtures and appliances, complete. Said rig known as the La Duke rig. The territory in which said threshing machinery is to be operated is as follows, to-wit: The territory of Wheatland, Egeland, and any other townships which said rig may be operated in the county of Day, and the townships of ——————— in the county of Roberts, all in the state of S. Dakota. * * * It is hereby agreed on the part of M. R. Baskerville to deliver over to the undersigned upon request 40 per cent. of all the earnings turned over to it, either in cash, thresh orders, notes or accounts pro rata, according to amount having been paid over to said second party to be used by the undersigned for the payment of running expenses of said machine. Said party of the first part covenants and agrees with the said party of the second part, to run and operate said threshing rig faithfully and economically in said above-described territory during each season and to furnish all necessary men and teams to operate same at their own cost and expense and in their own behalf. Said party further agrees that before leaving any job of threshing, they will procure from the party for whom said threshing was done a setlement either in cash or an accepted order, or good thirty-day note and to turn the same over to said second party or its agent on Monday of each week during the threshing season. Said first party further agrees to keep true and correct books of accounts of all threshing done and of all moneys received or owing for such threshing and to exhibit the same to said second party or its agents for examination when requested; it is agreed that nothing contained herein shall be so construed as changing or abrogating in any manner whatever the existing obligations of the undersigned to said M. R. Baskerville but that this instrument is given only as additional security. Said party of the second part is to receive 11

thresh orders and notes and accounts which may be turned over to it under and pursuant to this agreement, as collateral to above-described note and to apply the proceeds (except amounts returned to first party) as fast as collected upon the indebtedness above described. It is agreed that said second party shall make reasonable efforts to collect said thresh orders, notes and accounts at expense of first party, but said second party is not to be held liable for any failure to collect any of said thresh orders, notes or accounts. We hereby acknowledge full satinsfaction of all warranties on above-described tnreshing machinery and acknowledge the receipt of a true and correct copy of this mortgage. In testimony whereof, the said parties of the first part have hereunto set their hands and seals this 14th day of February, A. D. 1903."

It is contended by the respondent, in support of the ruling of the court below in directing a verdict, that the instrument denominated a chattel mortgage is so indefinite and uncertain that parties are unable to determine therefrom what earnings it was intended to cover. The appellant, on the other hand, contends that the alleged mortgage in controversy was fully authorized by the provisions of our Code, and that it was sufficiently definite and certain, and that under its provisions he was entitled to recover the amount of the money due from Jones, or at least 60 per cent. of the same. We are inclined to take the view that the appellant is right in his contention. It is undoubtedly true that under the provisions of our Code the owner of a threshing machine may mortgage the earnings of the same which may be earned in the futuer and that such mortgagee may hold such earnings as against the laborers employed in running such machine, providing the intention of the mortgagor to mortgage all the earnings of the machine, including the wages of the employees, is clearly shown by the chattel mortgage, and the description of the machine is sufficiently definite, and the time and place within which the earnings are to accrue are sufficiently specific, to give subsequent purchasers or claimants notice that the same are so mortgaged. That such a mortgage may be made, or earnings subsequently accrued, does not seem to be seriously questioned by the respondent, his contention being that the description of the earnings to be assigned, and the locality of such earnings, are not

sufficiently specific to constitute a valid mortgage of the subsequent earnings; and such seems to have been the view of the learned circuit court. But the chattel mortgage, when carefully examined, does not seem to be open to these criticisms. It seems to be clear and specific in its terms, showing an intention of the mortgagor to mortgage the entire earnings of the machine, including the earnings of the employees while being run in the localities specified in the counties of Day and Roberts during the years 1903 and 1904.

It is contended by the respondent that the method of ascertaining the 40 per cent. to be repaid to the mortgagor, or making the division, is indefinite and uncertain. This contention is clearly untenable. It is particularly specified that a division is to be made of all the earnings turned over, either in cash, thresh orders, notes, or accounts, pro rata, according to the amount having been paid; that is, 40 per cent. is to be paid over to the mortgagor in the same proportion of notes, orders and accounts that may accrue as those received. It is difficult to see how the mortgage contract could have been made more definite and certain in this regard. The machine itself which is to be run by the mortgagor, is particularly described by numbers, so that it can be easily identified. The territory in which the machine is to be operated, and the years in which the same is to be operated, are very fully and particularly described. No one, after examining the record, would fail to find therein a description which would enable him, aided by inquiries which the instrument itself suggests and directs, to identify the earnings intended to be mortgaged. The terms of the contract seem to fulfill the most exacting requirements of the rule which requires the intention of parties to be clearly and fully expressed before a court will enforce the contract. We can discover no reason why such a contract, if sufficiently clear and specific, should not be enforced by the courts. Such contracts enable parties of small means to secure threshing rigs ,and to pay for them out of their earnings. There is nothing in the terms of such contracts contrary to public policy, or to the best interests of agricultural communities, but they rather tend to encourage and develop such interest. After a careful exam-

ination of the provisions of the contract of mortgage in controversy, we are clearly of the opinion that the learned circuit court erred in holding it insufficient, and in directing a verdict in favor of the plaintiff.

The judgment of the circuit court is reversed.