INTERNATIONAL HARVESTER COMPANY OF AMERICA, a Corporation, Respondent, v. JOHN HANSON and Julia Hanson, his Wife, and Benedict Hanson and Dina Hanson, his Wife, Defendants, and Albert Cook, A. L. Moody, and Robert Sterling, Garnishees, and Benedict Hanson and Dina Hanson, Appellants.

(161 N. W. 608.)

Garnishment proceedings — creditor — debtor — third persons — claims — disposed of by debtor — before garnishment — no recovery against garnishee.

1. A creditor stands in the same position as his debtor with respect to claims against third persons in garnishment proceedings. No recovery can be had at the instance of a creditor against such third persons who are garnisheed, where prior to the garnishment the debtor has disposed of all of his beneficial interest in the claims.

Principal defendant — garnishee not liable to — no recovery.

2. Evidence examined and found to establish that garnishees were not at the time of garnishment liable to the principal defendant in any sum.

Future earning of machine — machinery — property not yet acquired — liens on — contract — for benefit of third person.

3. Section 6706 of the Compiled Laws of 1913, relating to liens on property not yet acquired or not yet in existence, and containing a proviso that "no lien or mortgage shall be created upon the future earnings of any machine or machinery operated in whole or in part with man or animal," construed and held not applicable to an assignment of rights under an existing contract, and that it does not prevent the making of a contract for threshing for the benefit of a third party.

Garnishee's affidavit — denying liability — evidentiary matter — need not contain.

4. A garnishee's affidavit denying liability need not contain evidentiary matter.

Opinion filed January 26, 1917. Rehearing denied February 28, 1917.

Note.—The validity of chattel mortgage of future earnings of threshing outfit would seem now to be governed by Comp. Laws 1913, § 6706, referred to in the opinion above, but for a general discussion of the subject, see note in 20 L.R.A. (N.S.) 505, where cases pro and con are collected.

The validity of assignment of demands yet to become due is discussed in 57 Am. Dec. 440; 82 Am. Dec. 349; and 2 Am. St. Rep. 472.

Appeal from District Court of Cass County, *Chas. J. Pollock,* J. Reversed.

*A. T. Cole,* for appellants.

The earnings of the threshing machine as soon as they became *in esse* were the property of the bank by purchase and payment. Bibend v. Liverpool & L. F. & L. Ins. Co. 30 Cal. 78; Waples, Attachm. & Garnishment, 1885 ed. p. 211; Fisher v. Hall, 44 Mich. 493, 7 N. W. 72; Robinson v. Tevis, 38 Cal. 611; Van Staphorst v. Pearce, 4 Mass. 258.

The right of contract cannot be prohibited, and a parol assignment of a claim is good. Here, the parol contract made between the bank and the appellants became binding and operative as soon as acted upon by the parties. Roberts v. First Nat. Bank, 8 N. D. 474, 79 N. W. 1049; Garnsey v. Gardner, 49 Me. 167; Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N. W. 303; Tracy v. Waters, 162 Mass. 562, 39 N. E. 190; Porter v. Bullard, 26 Me. 448; Harris v. D'Wolf, 4 Pet. 147, 7 L. ed. 811; Wheeler v. Sumner, 4 Mason, 183, Fed. Cas. No. 17,501; Nelson v. Edwards, 40 Barb. 279.

It is not necessary that the debt be earned at the time of assignment. Sykes v. First Nat. Bank, 2 S. D. 242, 49 N. W. 1058; Grimsrud Shoe Co. v. Jackson, 22 S. D. 114, 115 N. W. 656; McCormick Harvester Mach. Co. v. Caldwell, 15 N. D. 132, 106 N. W. 122.

The State Bank of Gardner advanced money on the assignment, and defendant began checking on the bank under the oral agreement and before threshing started, and therefore the statute of frauds is not involved. Grant v. Pendery, 15 Kan. 236; West v. O'Hara, 55 Wis. 645, 13 N. W. 894; Dugger v. Kelley, 168 Iowa, 129, 150 N. W. 27; Center v. McQuesten, 18 Kan. 476; Stariha v. Greenwood, 28 Minn. 521, 11 N. W. 76; De Walt v. Hartzell, 7 Colo. 601, 4 Pac. 1201; Fitzgerald v. Morrissey, 14 Neb. 198, 15 N. W. 233; Larson v. Jensen, 53 Mich. 427, 19 N. W. 130.

The effect of the statute of frauds is attempted to be brought into the case in an effort to destroy a valid oral and executed contract and to deprive the parties of the fruits of such valid contract after they have been produced by active operations under such contract. To sanction such proceedings would be to make of the statute of frauds an incentive to and a shelter for fraud. Lay v. Neville, 25 Cal. 545;

Chaffin v. Doub, 14 Cal. 384; Pacheco v. Hunsacker, 14 Cal. 120; Garnsey v. Gardner, 49 Me. 167; Switzer v. Smith, 35 Iowa, 269; Shindler v. Houston, 1 N. Y. 261, 49 Am. Dec. 339; Taylor v. Mueller, 30 Minn. 343, 44 Am. Rep. 199, 15 N. W. 413; Somers v. McLaughlin, 57 Wis. 358, 15 N. W. 442; Smith v. Stoller, 26 Wis. 671.

The things assigned were choses in action, and part performance of the contract takes the whole matter out of the operation of the statute of frauds. Driggs v. Bush, 152 Mich. 53, 15 L.R.A.(N.S.) 654, 125 Am. St. Rep. 389, 115 N. W. 985, 15 Ann. Cas. 30; Sloan Saw Mill & Lumber Co. v. Guttshall, 3 Colo. 8; Roberts v. First Nat. Bank, 8 N. D. 474, 79 N. W. 993; Gillet v. Fairchild, 4 Denio, 80; Sheldon v. Sill, 8 How. 441–449, 12 L. ed. 1147–1151; Acme Harvesting Mach. Co. v. Hinkley, 23 S. D. 509, 122 N. W. 482, 21 Ann. Cas. 743; Erickson v. Brookings County, 3 S. D. 434, 18 L.R.A. 347, 53 N. W. 857.

Services rendered and those to be rendered are both assignable and the subject of barter and sale for lawful purposes. Wallace v. Long, 105 Ind. 522, 55 Am. Rep. 222, 5 N. E. 666.

*Lawrence & Murphy,* for respondent.

The garnishee cannot set up and prove the various special defenses here involved on his bare affidavit denying liability. Pleadings are for the purpose of advising the parties to an action as to the claims or defenses of the parties, so that each may be ready to meet them, as well as to inform the court of the issues. Parliman v. Young, 2 Dak. 175, 4 N. W. 143; Marshall v. Haney, 9 Gill, 258; Sling v. Scottish Union & Nat. Ins. Co. 7 Utah, 441, 27 Pac. 170, 171; Blum v. Bruggemann, 58 App. Div. 377, 68 N. Y. Supp. 1066; Cook v. Merritt, 25 Pac. 177, 15 Colo. 212; Tucker v. United States, 151 U. S. 164, 38 L. ed. 112, 14 Sup. Ct. Rep. 301.

Written pleadings cannot be departed from or abandoned at will during the trial, and new issues injected into the litigation. Desnoyer v. Hereux, 1 Minn. 19, Gil. 3; Vide Best, Ev. §§ 229, 249; Code Proc. 530, § 118.

If a party relies upon an estoppel, he must plead it. Gill v. Rice, 13 Wis. 549; Clarke v. Huber, 25 Cal. 594; Burlington & M. River R. Co. v. Harris, 8 Neb. 140; Waddle v. Morrill, 26 Wis. 611; Etcheborne v. Auzerais, 45 Cal. 121; Gaylord v. Van Loan, 15 Wend.

308; People ex rel. M'Kinch v. Bristol & R. Turnp. Road, 23 Wend. 222; Parliman v. Young, 2 Dak. 175, 4 N. W. 139.

The answer of the defendant must contain any new matter constituting a defense or counterclaim. This statute is imperative. McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696; Comp. Laws 1913, § 7448.

A claim under an assignment must be pleaded as new matter by way of defense. The debt here is admitted, but the garnishees, by way of avoidance and as new matter, claim the bank had a superior lien on the money by virtue of the assignment by defendant as security for past debts and future advances. Hogen v. Klabo, 13 N. D. 323, 100 N. W. 847.

The attempted assignment was invalid, because it related to and involved a mere possibility. The funds had not been earned, and defendant had not even a contract that he would earn them. Comp. Laws 1913, § 5491; Herbert v. Bronson, 125 Mass. 475; Twiss v. Cheever, 2 Allen, 40; Eagan v. Luby, 133 Mass. 543; Bell v. Mulholland, 90 Mo. App. 612; Billings v. O'Brien, 14 Abb. Pr. N. S. 238, 45 How. Pr. 392; Robinson v. McKenna, 21 R. I. 117, 79 Am. St. Rep. 793, 42 Atl. 510; Runnels v. Bosquet, N. I. & S. Co. 60 N. H. 38; Mulhall v. Quinn, 1 Gray, 105, 61 Am. Dec. 414.

It is conceded that future earnings under an employment or contract existing at the time of the assignment are subject to a valid assignment in the absence of a statute, yet such assignment, unless there be an existing engagement to do the work, is invalid, because such future earnings constitute a mere possibility coupled with no interest. Lehigh Valley R. Co. v. Woodring, 116 Pa. 516, 9 Atl. 58; Kennedy v. Tiernay, 14 R. I. 528; Lightbody v. Smith, 125 Mass. 51; Hartley v. Tapley, 2 Gray, 565; Huling v. Cabell, 9 W. Va. 522, 27 Am. Rep. 562; Billings v. O'Brien, 14 Abb. Pr. N. S. 238, 45 How. Pr. 401; Dyer v. Schneider, 106 Minn. 271, 20 L.R.A.(N.S.) 505, 130 Am. St. Rep. 615, 118 N. W. 1011; Skipper v. Stokes, 42 Ala. 255, 94 Am. Dec. 646; Cooper v. Douglass, 44 Barb. 409; Purcell v. Mather, 35 Ala. 570, 76 Am. Dec. 307; O'Niel v. Wm. B. H. Kerr Co. (O'Niel v. Helmke) 124 Wis. 234, 70 L.R.A. 338, 102 N. W. 573.

Any attempted transfer of after-acquired property, in the absence of any vested interest in the subject of the transfer, is not effectual to

36 N. D.—6.

create a lien, even in equity. Merchants' & M. Sav. Bank v. Lovejoy, 84 Wis. 601, 55 N. W. 108; Lamson v. Moffat, 61 Wis. 153, 21 N. W. 62; Brown v. Neilson, 61 Neb. 765, 54 L.R.A. 328, 87 Am. St. Rep. 525, 86 N. W. 498.

The attempted transfer was void because not in writing. Sykes v. Hannawalt, 5 N. D. 335, 65 N. W. 682.

BIRDZELL, J.   This action was begun by the plaintiff against John Hanson, Julia Hanson, Benedict Hanson, and Dina Hanson, defendants, upon a judgment which had been obtained against them in Clay county, Minnesota, upon certain promissory notes set out in the complaint.   Garnishment summonses were served upon the garnishee Sterling on September 10, 1914, and upon garnishee Moody on September 14, 1914.   Jury trial being waived, trial was had before the court in the district court of Cass county, resulting in a judgment by stipulation upon the Minnesota judgment.   Separate judgments were entered against the garnishees as follows:   Against Robert Sterling in the sum of $175.60, and against A. L. Moody in the sum of $863.05. Appellants Benedict Hanson and Dina Hanson have appealed to this court from the judgments against the garnishees.

In his assignments of error appellants' counsel takes exception to certain of the findings of fact of the trial court and to the conclusions of law drawn from the facts found.   The questions of fact presented upon this appeal involve in reality the sufficiency of the evidence to establish certain conclusions of fact upon which appellants' main proposition of law depends.   Briefly stated, the trial court found that on or about the third day of July, 1914, defendant Benedict Hanson went to the State Bank of Gardner (not a party to this action), and made an oral agreement with its managing agent, by the terms of which the said Hanson agreed to deliver to the bank the proceeds and earnings of his threshing outfit for the season of 1914, to be applied by the bank, after paying the operating charges, to the payment of indebtedness due and owing by Hanson to the bank in the sum of $1,212.75, nearly all of which was past-due; that during the month of August certain moneys earned by Hanson in threshing for the garnishees Moody and Sterling were, in pursuance of the above arrangement and in compliance with written orders therefor, paid by the garnishees to the State Bank of

Gardner, and that during the month of August Moody, through his agent, entered into a contract with Benedict Hanson for additional threshing, which was done prior to the 12th day of September following, and prior to the service of the garnishment summons upon Moody; and that thereafter, to wit, on the 15th day of October and on the 16th day of October, Sterling and Moody respectively deposited the sums of $137 and $815.85 in the State Bank of Gardner, to the credit of the general account of Benedict Hanson. From these findings of fact the learned trial judge found that the attempted transfer by Hanson to the bank of his interest in the earnings of his threshing rig from the work done for Sterling and Moody was invalid for the reasons (1) that the assignment was but the assignment of a mere possibility coupled with no interest. Hanson having no contract with Sterling or Moody at the time of his arrangement with the bank, and (2) for the reason that the attempted transfer was in violation of § 6706 of the Compiled Laws of 1913, providing that "no lien or mortgage shall be created on the future earnings of any machine or machinery operated in whole or in part with man or animal." Appellants' challenge of the correctness of these two propositions presents the questions upon which this case must be decided.

(1) That the transfer was but the assignment of a mere possibility coupled with no interest, Hanson having no contract with Sterling or Moody at the time of his arrangement with the bank. A careful perusal of the record in this case convinces us that the legal sufficiency of Hanson's acts to devest him of his interest in the earnings of his threshing rig for the year 1914 cannot properly be decided by considering alone the transaction between him and the bank early in July, but that we must regard as well the dealings of the parties prior to the service of the garnishment summons. It is a well-established rule of law in this jurisdiction that the liability of a garnishee is to be measured by his responsibility and relation to the defendant, and that the plaintiff cannot by garnishment place himself in a position superior to that occupied by the defendant as to the garnishee. Shortridge v. Sturdivant, 32 N. D. 154, 155 N. W. 20; Petrie v. Wyman, 35 N. D. 126, 159 N. W. 616. The plaintiff in this case was at the time of the service of the garnishment summons an unsecured creditor of the principal defendants. The garnishees Moody and Sterling were

indebted either to defendant Benedict Hanson or to the State Bank of Gardner on account of work that had been performed by Hanson. If, prior to the garnishment proceedings, arrangements had been made whereby Moody and Sterling had become liable to the bank, and these arrangements had been assented to by all parties concerned save the plaintiff in this case, Hanson had no interest in any of the subsequent payments made by the garnishees to the bank.

The law requires the observance of no particular formality in the assignment of a chose in action. It was competent for Hanson to devest himself of all his interest in the future earnings of the machine, without the signing of any order and without the execution of any bill of sale, mortgage, or written instrument of any kind. Roberts v. First Nat. Bank, 8 N. D. 474, 79 N. W. 993. If no assignment were shown, and the evidence established that an arrangement was made whereby Hanson was to thresh for Moody and Sterling, and that Moody and Sterling were to pay the amount of the threshing bill to Hanson's creditor, the bank, Hanson retained no interest in the proceeds that could be reached through garnishment by his general creditors. In Shinn on Attachments and Garnishments, we find this clear statement of the law applicable: "When a garnishee has contracted with the principal debtor that he will pay the money or deliver the property to some third person, then the plaintiff in garnishment cannot recover because he is only placed by the garnishment in the position of the principal defendant, who could not himself recover from the person made the garnishee." 2 Shinn, Attachm. & Garnishments, § 516; Baker v. Eglin, 11 Or. 333, 8 Pac. 280. And in a case of this character the assent of the creditor to the terms of the contract made for his benefit is presumed. Rogers v. Gosnell, 58 Mo. 589. We are satisfied from the record and from the law applicable to the facts disclosed, aside from the possible effect of § 6706 of the Compiled Laws of 1913, that the plaintiff stands in no better position in respect to the garnishees than Hanson stood at the time of the service of the garnishment summons upon Moody and Sterling, and that at such time Hanson would have been unable to recover anything from them as against the bank.

The witness Mitchell, cashier of the State Bank of Gardner, and Benedict Hanson, are in substantial accord as to the arrangement made

in July, as the following extracts from the testimony of Mitchell and Hanson will show.

In answer to the query as to business relations between Hanson and the bank, Mitchell testified:

A. As near as I can remember he came to me and wanted us to take care of his labor and expenses, threshing expenses, and he was to turn over the money that he received for threshing, or earned for threshing.

Q. And anything further?

A. Well, as near as I can remember if there was anything above that, it was to be turned in on what he owed us at the time.

Q. Was he in debt to you at the time?

A. Yes, sir.

Q. Can you say about how much he was in your debt?

A. Yes, sir.

Q. How much?

A. $1,212.75.

Q. And state whether or not this was prior to the time that he began threshing?

A. Yes, sir.

Q. Have you had any final settlement with Hanson as yet for the year 1914?

A. No, sir.

And he gave following testimony upon redirect examination:

Q. Where was this talk about you furnishing funds, or this talk with him about the threshing?

A. In the bank.

Q. And what was said in reference to getting the funds? what was said between you and Hanson? and what did Hanson ask you for?

A. He asked us to take care of him on his labor and other necessary expenses, threshing expenses.

Q. What did you say to him in reference to that?

A. Well, I told him we would take care of him under those conditions.

Q. Under what conditions?

A. That he turn the money over to us.

Q. And state whether or not that was agreed to?

Mr. Murphy: That is objected to as calling for a conclusion of the witness.

The court: Sustained.

Q. And what did he say in reference to that?

A. He said he would have the parties that he threshed for turn in the money to us.

The witness Hanson, when called for cross-examination under the statute, testified as follows:

Q. Now the bank at Gardner claimed an interest in this money?

A. Before I started to thresh, you know, I had to have some money to get a start with, and I asked them for money, and he wanted to know how I could fix it up, and I told him who I was going to thresh for, and I would give him an order on the party I was going to thresh for, and if they accepted it—

Q. Was that order in writing?

A. Yes, sir.

The testimony of the witness Hanson would further tend to establish that at the time the arrangement was made with the bank he had an agreement with Moody to do his threshing, but in view of the other facts clearly established, we regard this fact as quite immaterial. The testimony of Hanson, Sterling, and Clark, Moody's foreman, clearly establishes an arrangement perfected in August whereby all of the money that was earned by Hanson in the operation of his threshing rig should be turned over to the State Bank of Gardner.

Hanson testified as follows:

Q. How much did you owe at the bank before you started this threshing?

A. In the neighborhood of about $1,400.

Q. About $1,400?

A. Yes, in August.

Q. And the proceeds of that bill of Sterling's was to be delivered up to the bank to apply on that debt?

A. The running expenses was taken out of it and for operating the machine.

Q. How much was turned over to the bank after the running expenses were taken out?

A. There wasn't anything to be turned over.

Q. You operated then at a net loss?

A. I had to have some extras and some other bills that had to be paid,—what I got from the machine house.

Q. That doesn't explain where the money went to.

A. And the same way with store bills that I figured I had incurred during that season,—they had to be taken care of.

Q. You don't seem to answer by questions; how much money did Sterling pay to the bank?

A. He paid all his money to the bank.

Q. How much?

A. I think he paid $150 at one time and $137 at another time.

Q. When did he pay the $137 to the bank?

A. I think the latter part of September.

Q. The latter part of September?

A. I think it was.

Q. After these garnishee papers were served?

A. Yes.

Witness Sterling testified as follows:

A. He agreed to come with the machine at $50 a day, and I was to pay the machine and teams, or the man and teams.

Q. In other words, you were to pay him $50 a day for himself and machine?

A. For himself and machine.

Q. The earnings of the machine?

A. And he was to look after the crew and he was to pay the men and I was to turn the money over to the bank; he asked me if I would turn the money over to the bank to pay for that.

Witness Clark testified as follows:

Q. Was there anything said in reference to the amount of the threshing to be done when you talked with Hanson; I don't mean in dollars, but—

A. Yes, it was understood that—

Q. What was said? what did he say and what did you say?

A. I said that I wanted him—wanted Hanson to do the entire threshing on the section and a half of land owned by Moody at Gardner; it

wasn't all under cultivation, but whatever was under cultivation and in crop, and he replied that he would as fast as it was ready.

• •    •    •    •    •    •    •    •    •    •    •    •    •    •    •

Q. And state whether or not there was any conversation as to how and where the payments were to be made?

A. (Over objection). That we would pay the State Bank of Gardner as fast as Carter 'phoned and said that the work had been done.

As we view the record it establishes to our satisfaction that an arrangement was made prior to the service of the garnishment summons whereby the garnishees had agreed to pay to the bank whatever money would be earned by Benedict Hanson in threshing for them. In the view we take of the case, it is thus immaterial whether or not the transaction between Hanson and the bank early in July amounted to an assignment conveying to the bank Hanson's interest in the future earnings of the machine, and the authorities cited by respondent to the effect that the assignment in July was inoperative because amounting to an attempt to assign future earnings on contracts not yet made are inapplicable. We do not question the soundness of respondent's contention. It is clear that an attempt to assign earnings under contract not yet made would be ineffectual as a transfer of any present interest, but in the light of the transactions in August at the time the contract for the threshing was made, we think the principle contended for is inapplicable in this case. The arrangement between the bank and Hanson did amount to a contract to assign the future earnings, and the subsequent events, viewed either in the light of the prior arrangement or standing alone, did, in our judgment, devest Hanson of all interest in the earnings of the machine. Thereafter the bank could sue in its own right as the beneficiary of this contract or as assignee of Hanson's right, and this right was fully vested in the garnishment.

(2) This brings us to a consideration of the effect, if any, of § 6706 of the Compiled Laws of 1913 upon the transaction above discussed. The section referred to reads as follows: "An agreement may be made to create a lien upon property not yet acquired or not yet in existence by the party agreeing to give the lien. In such case, the lien agreed for attaches from the time when the party agreeing to give it acquires an interest in the thing to the extent of such interest; provided

that no lien or mortgage shall be created on the future earnings of any machine or machinery operated in whole or in part with man or animal." Respondent's contention based upon the above section is that Benedict Hanson's efforts to transfer to the bank his interest in the earnings of the threshing rig amounted to an attempt to create a lien or mortgage in violation of the statute. As we construe the section in question, it was not intended to prevent transactions of the character here involved. The evidence does not satisfactorily establish that at the time Hanson and Mitchell made arrangements for the extension of additional credit to Hanson in consideration of Hanson's assigning to the bank the season's earnings from the threshing machine, Hanson had entered into any contracts giving him a present interest in the earnings. There would be much force in respondent's contention if the record in this case disclosed nothing more than the attempted assignment from Hanson to the bank early in July. It will be noted that the entire section preceding the proviso pertains to liens upon property "not yet acquired or not yet in existence," and as to such property the statute merely lays down the equitable rule that the lien attaches from the date the property is acquired or from the date it comes into existence. Where wages to be earned under an existing contract are assigned or where the increase of property owned is mortgaged, as crops or the future offspring of animals, the mortgage is regarded as transferring a present interest. Jones, Chat. Mortg. 5th ed. §§ 143, 144; Benjamin, Sales, 6th ed. p. 86; Mechem, Sales, § 200. The application of the rule established by these authorities to transactions of the character here involved has been the subject of judicial investigation in this and neighboring jurisdictions, and the cases decided in this jurisdiction before the proviso was added to the statute in 1907 established the validity of mortgages upon the future earnings of threshing machines in cases where such mortgages were given before the mortgagor had entered into any contracts for threshing. Sykes v. Hannawalt, 5 N. D. 335, 65 N. W. 682; Reynolds v. Strong, 10 N. D. 81, 88 Am. St. Rep. 680, 85 N. W. 987. See also Flanders v. French, 20 S. D. 316, 106 N. W. 54; and Dyer v. Schneider, 106 Minn. 271, 20 L.R.A.(N.S.) 505, 130 Am. St. Rep. 615, 118 N. W. 1011. The rule of these cases was no doubt changed by the adoption of the proviso quoted above. In this case it is necessary to consider the effect of the proviso in the light of the transactions in

August at the time the contracts for the threshing were made. The testimony hereinbefore quoted clearly shows that at that time the garnishees agreed to discharge their obligations under the contracts by paying the bank. Thereafter Hanson had no interest in the earnings save that of seeing that they were applied in liquidation of his indebtedness to the bank. That arrangement amounted to a contract for the benefit of the bank, and the subject-matter of the contract was Hanson's right under an existing contract, and not property "not yet acquired or not yet in existence" within the purview of the statute in question. In our opinion the statute does not prohibit the owner of a threshing machine from making a contract to do threshing which will operate for the benefit of a named beneficiary.

Some minor questions are raised by respondent. It is claimed that the acts of Moody and Sterling in depositing the money in the bank to Hanson's credit were not done in performance of the contractual arrangement between them and Hanson and the bank. In our opinion this fact has no important bearing. The deposit of the money to Hanson's credit might well have been but a convenient mode of accounting for the receipts which were to be subjected to the arrangement made; and furthermore, inasmuch as the surplus over operating expenses was to apply on the indebtedness owing to the bank, Hanson would have had no right to demand any money from the bank until all his indebtedness was paid. This would be true even though the money were deposited in his name. While some of the money was checked out on Hanson's checks, there is nothing to show that this was not done in pursuance of the arrangement to first take care of the cost of operation.

It is further contended that the garnishees, by reason of having filed an affidavit denying liability to Hanson, are precluded from showing the arrangement with the bank. If appellants' contention as to the facts is correct, the affidavit is true in fact. The garnishees were under no duty to inform the plaintiff where it might find property belonging to Hanson, nor were they under obligation to disclose the evidentiary matter in support of the claim of nonliability.

For the reasons assigned the judgment of the trial court is reversed, with costs.