FIRST NAT. BANK OF CINCINNATI *v.* COATES and another.

THIRD NAT. BANK OF CINCINNATI *v.* SAME.

COMMERCIAL BANK OF CINCINNATI *v.* SAME.

RENO COUNTY STATE BANK *v.* SAME.

*(Circuit Court, W. D. Missouri, W. D.   1881.)*

1. NEGOTIABLE INSTRUMENTS—DRAFT.
   A draft is a check, though it is apparent on its face that the drawer and drawee are residents of different states.

2. SAME—EQUITABLE ASSIGNMENTS.
   A check operates as an equitable assignment *pro tanto,* as between the holder and the assignee in insolvency of the drawer, where it is made and delivered prior to the assignment and not presented for payment until after the drawee is notified of the assignment by the assignee.

3. SAME—ELECTION OF REMEDIES.
   In an action by the draftholders against such assignee to enforce payment of their drafts in full, *held,* that they had not barred themselves from recovering in this action by presenting their drafts to the assignee as claims against the estate, having them allowed, and accepting dividends thereon.

The Martin Bank carried on business at Kansas City, and between July 25 and August 2, 1878, made and delivered to the complainants in these cases its drafts or checks on the Metropolitan National Bank, of New York. They were in the following form, the only difference being in number, date, amount, and name of payee:

"STATE OF MISSOURI.

"$714.65.                THE MARTIN BANK,                No. 196,104.

"KANSAS CITY, MO., JULY 30, 1878.

"Pay to the order of Theo. Stanwood, Cashier, $714.65.

"D. O. SMART, Vice President.

*"To Metropolitan National Bank, New York."*

The drawer bank failed, and on August 3, 1878, made an assignment under the laws of Missouri to the defendant Coates, of all its property and effects, for the equal benefit of all its creditors. The first notice which the Metropolitan National Bank received of the assignment was on the morning of August 5th, when it received a telegram from Coates which simply stated that fact. At that time the Metropolitan Bank had in its hands, on deposit to the credit of the Martin Bank, about $56,000. The two banks had for many years been correspondents, and most of the New York exchange sold by the Kansas City Bank had been on the Metropolitan Bank. After this notice of the assignment the latter bank paid none of the drafts drawn on it. The drafts belonging to the complainants were presented

on the fifth, sixth, and seventh days of August. Payment of these was refused and they were protested.

In September the Metropolitan Bank turned over to Coates, as assignee, the moneys in its hands. In accordance with the law of Missouri governing voluntary assignments, the assignee gave notice that he would, on certain days, sit for the allowance of demands against the estate, on which days creditors were required to appear and present their claims. The complainants appeared, presented their drafts, which were allowed by the assignee as general demands, without objection on their part, and they afterwards received from him two dividends, which were declared alike on all claims against the estate. Subsequently, these bills were filed to compel the assignee to pay to the complainants the full amount of the drafts out of the moneys in his hands which he had received from the Metropolitan National Bank. About $80,000 of drafts drawn by the Martin Bank on the Metropolitan National Bank were outstanding and unpaid, but actions of this character for about $22,000 only, had, at the time of this hearing, been begun. On the hearing it was insisted on behalf of the assignee that the complainants were general creditors of the bank; that the funds received by him from the New York bank were a part of the general assets of the Martin Bank; and, further, that having presented and obtained from the assignee a general allowance of their demands, on which they had accepted dividends, they had thus elected to be considered general creditors, and that such election prevented a recovery here, based on the assertion of a different remedy.

*Gage & Ladd,* for complainants.

*Pratt, Brumback & Ferrey,* for defendants.

MILLER, Justice, (*orally.*) My first impression was that the paper which is called indifferently a draft, a bill, and a check, and on which these actions are founded, was in the nature of a bill of exchange, or draft, and not in the nature of a bank check; but the authorities looked at satisfied me that I was wrong. Even an inland bill of exchange is payable on demand, without days of grace, and is a check of one bank on another, and whatever may have been my original idea as to whether it was a bill of exchange or a check, the authorities have settled that, and I must say it is a bank check. I think the authorities have also settled, perhaps not with unanimity, but with such weight as to guide us, that a bank check is drawn directly against money in the hands of the bank which belongs to the drawer of the check as depositor; not that any particular money is his, but

he has funds in that bank against which he draws that check. If he has no funds his check amounts to nothing; but the bank has to pay when it has funds. It is, therefore, an order to pay bearer so much out of my money in your hands. The authorities say it is an appropriation of that much money. The nature of the transaction is this: I have so much money in the bank. To be sure, it is the bank's money, but is a fund deposited to my credit. I draw a check in favor of A. B. for $100. That is a direction to the bank to pay A. B. $100 out of that money, and the books call that an appropriation of that much money.

The question here is whether this is an appropriation in equity of that much of that fund in favor of the payee. It is said it is not, because the payee or holder of the check cannot bring suit against the bank for the money, and therefore it is not an equitable assignment of that much money. But that argument is founded on a misconception, or want of proper conception, of the doctrine of equitable assignments. The very words "equitable assignment" are used because the assignment is only recognized in a court of equity, and not in a court of law. If it were recognized in a court of law, it could be enforced there, and we would never have heard of any such words as "equitable assignment." Therefore, it is an assignment of that much of the debt, which a court of equity will recognize and a court of law will not.

The reason of this is obvious. One reason, as was stated in the argument here, was that there was no privity between the payee of the check and the bank on which it was drawn. And that is true: at law there is no such privity. Another reason is that a man may owe another several thousand dollars, which is due or to become due, and the creditor may draw in various sums and at various times for that money, drawing orders on him, which between the parties is intended as an appropriation of that much of the fund. Now, the drawee, or the man who holds the fund, says: "I don't want to be pestered with all these drafts. I owe the bank $5,000, due the first of November, and I will go and make the payment now, and not be bothered with 20 or 30 suits." In law that cannot be done; but a court of equity looks at it differently. It says, "Here is a fund that originally belonged to A., but here are claims of B., C., D., E., and F., and they can have a certain amount of money appropriated to them." That is the difference between the powers of a court of law and a court of equity, and that is why these are called equitable assignments. Courts of equity say they are a lien upon that fund

which will be enforced. I think, if the Metropolitan National Bank had held the money, and had it to-day, it could be sued just as Mr. Coates can be. But the fund has been transferred to Mr. Coates, and he is now the holder of the fund, and the court can get hold of Mr. Coates and subject him to liability. It is my opinion that, after notice to the Metropolitan National Bank, it was bound to hold that money to answer those drafts. At all events, as the case stands, this assignee took the fund transferred to him subject to the right which had been established by the draft on its presentation. I am not sure, however, that the Metropolitan National Bank could have been held liable, because I believe, on reflection, they had notice of the assignment before they had notice of the drafts, and it is notice to the holder of the fund which fixes the liability of the holder; and in that, perhaps, I was in error. I believe Mr. Coates notified them by telegraph of the assignment of the bank to him before the drafts were protested. That being the case, the Metropolitan National Bank was not liable. That is an immaterial consideration, however, as the fund remains the same. The philosophy of it is that this fund having been appropriated by these checks, duly presented, did not pass by the assignment; that the fund on which they were drawn, to that extent, did not pass by the assignment as the general property of the bank into the hands of Coates, but when he got it he held it subject to the lien established on it. The result of that is that these drafts are each of them an appropriation of that much of the fund, and the complainants are entitled to recover the amount of them, less the amounts received by them in dividends from the assignee. Nor does the fact that they were presented to the assignee for allowance, and by him allowed as general demands against the estate, and that the complainants received dividends from him on such allowance, constitute an election by them of a remedy which will bar a recovery here. The remedies are not inconsistent.

There is no evidence that the assignee will ever be called on to account for an excess of the fund. He can at any time file his bill requiring everybody to come with their claims for amounts unpaid.