(No. 20369.—

THE COSMOPOLITAN STATE BANK, Plaintiff in Error, *vs.* THE LAKE SHORE TRUST AND SAVINGS BANK, Defendant in Error.

*Opinion filed February 18, 1931—Rehearing denied April 10, 1931.*

EUGENE P. KEALY, for plaintiff in error.

ALDEN, LATHAM & YOUNG, (HOBART P. YOUNG, of counsel,) for defendant in error.

·Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Cosmopolitan State Bank sued the Lake Shore Trust and Savings Bank in the municipal court of Chicago to recover the amount of a check for $1762.50, dated November 5, 1925, drawn by A. Anderson on the plaintiff, payable to the order of the Auburn Automobile Company, appearing to be indorsed by the payee, which was cashed by the defendant, indorsed by it and presented to and paid by the plaintiff. The check was charged to Anderson's account, and later he made a claim to have the amount credited to him because the check was paid without authority and not upon the order of the payee. The plaintiff then credited Anderson's account with the amount of the check and sued the defendant for that amount. The cause was tried before a judge without a jury and at the conclusion of the evidence for the plaintiff judgment was rendered in favor of the defendant. The Appellate Court affirmed the judgment, and the record was certified to this court pursuant to a writ of *certiorari* allowed on the petition of the plaintiff.

Anderson was a depositor who maintained a checking account in the plaintiff bank. C. R. Schuster was a friend of Anderson who conducted an automobile business in the name of Clark Motor Sales on North Clark street, in Chicago, near the garage where Anderson kept his automobile. Schuster dealt in Auburn automobiles. He purchased cars from the Auburn Automobile Company at its branch, the Auburn Chicago Company, on South Michigan avenue, at wholesale prices, which he was obliged to pay on delivery, and he sold for such prices and on such terms as he chose. He offered to sell Anderson an Auburn automobile at the wholesale price, but he had no car .at his place of business which Anderson liked. They went down together to the Auburn Chicago Company, where Anderson selected a car which suited him. Its motor number was 6470 and its serial number 2,641,061, but Anderson was not informed of these

numbers. Two or three days later Schuster told Anderson that he wanted to get delivery of the car and asked Anderson to give him a check. Anderson told him he would make the check to the Auburn Automobile Company, that he was buying the car from that company, that Schuster was giving him the wholesale price and he wanted to make out the check to the company the car was coming from. He made the check for $1762.50 to the Auburn Automobile Company as payee. Schuster took the check and said he was going down to get the car. The fact was that Schuster had got the car two days before Anderson gave him the check, had paid for it and brought it up to his garage. He had also executed a chattel mortgage on it, dated October 29, 1925, for $1605.90, which he acknowledged on November 5, 1925, before James A. Kearns, clerk of the municipal court, and which was filed with the recorder on November 9, 1925. The check was deposited with the defendant and was paid to it on November 6, 1925. When received in evidence it bore the following indorsements:

"Motor number 6470   Serial 2641061.
Auburn Automobile Company
F. P.
Clark Motor Sales
C. R. Schuster
Paid through early clearings to Lake Shore Trust & Savings Bank Nov. 6, 1925."

The indorsement of the numbers was in Anderson's handwriting. He testified that he got the numbers from Schuster when Schuster called up for the check. Anderson asked for the numbers because he wanted to put them on the back of the check. The name of the automobile company was typewritten or stamped with a rubber stamp. The initials "F. P." and the two names below were handwritten and the last indorsement was stamped.

Frank H. Popp testified that he was connected with the Auburn Automobile Company from 1924 to 1928 as vice-

president and general manager of the Auburn Chicago Company, a subsidiary of the Auburn Automobile Company; that the indorsement "Auburn Automobile Company, F. P.," was not his signature; that he never authorized the indorsement of the check; that the indorsement was not made with a stamp by the automobile company; that the check never was in the possession of the company and that it never received the proceeds of the check and never had or claimed any interest in it. Schuster bought the identical car referred to by the serial number on the back of the check three days before the date of the check. He paid for it and it was delivered to him on the same day. The evidence was all produced by the plaintiff, and when the plaintiff rested the defendant offered no evidence. The court thereupon found the issues for the defendant and rendered judgment against the plaintiff for costs.

The subject matter of this suit is a bank check—a negotiable instrument to which there are three parties: the drawer, Anderson; the drawee, the plaintiff; and the payee, the Auburn Automobile Company. The rights and liabilities of these parties under the law are not doubtful. The plaintiff was bound to pay the amount of the check of the drawer to the payee or to its order, and to no other person. So far as the facts of this case are concerned, the rights and duties of the parties are not complicated by any question of identity or intention or any equities among the parties but are to be determined solely by the application of the rules of commercial law in relation to negotiable instruments. Anderson, though he owed the automobile company nothing, drew his check for the price of the car, making it to the company as payee. He had visited the company's show rooms and selected a car which suited him. He apparently believed he was buying the car of the company but the company understood that it sold the car to Schuster. Schuster paid for it and took it away the next day. He did not, however, tell Anderson he had the car. On the

contrary, he asked Anderson, after he had the car in his possession, for a check for the price and told him he wanted to get delivery of the car. He asked to have the check made to him, but Anderson, thinking the car was the automobile company's not yet delivered and that it was entitled to the purchase money, made the check payable to the automobile company and delivered it to Schuster. In fact, not only did Anderson not owe the automobile company anything but he did not owe Schuster anything, because, at the time, Schuster had given a chattel mortgage on the car for more than nine-tenths of what Anderson was to pay for it. However, Anderson wrote the check to the automobile company as payee and gave it to Schuster to pay the automobile company for the car and get possession of it.

All these things, however, have nothing to do with the merits of this case. Anderson, for whatever reason seemed sufficient to him, made the check and directed the plaintiff to pay $1762.50 to the order of the automobile company. Schuster took the check knowing that it was payable to the order of the automobile company and knowing that he could not collect it without the indorsement of the payee, the automobile company. The relations of Anderson and Schuster, of Schuster and the automobile company, of the automobile company and Anderson, or of any of them, and the bank, under the circumstances shown by the evidence had nothing to do with the duty of the bank to pay the check to the order of the automobile company. It was a complete stranger to the transaction of the purchase of the car and was under no obligation to anyone in respect to that transaction. Its duty in regard to the check was to Anderson only—the drawer. The general rule is well settled that the obligation of a bank is to pay, on demand, the funds of the depositor to the payee named in each check, or to his order or to bearer, as the check may direct, and it must ascertain at its peril the identity of the payee and the genu-

ineness of the indorsements, though each indorsement is a guaranty of all prior indorsements. The bank cannot settle equities among the various indorsers, the payee and the drawer of a check and third parties, strangers to the instrument, but its only authority, where the check is payable to the order of the payee, is to pay it on such order according to its terms. Yet the defendant in error's brief is based entirely on these supposed facts wholly outside the terms of the check: (1) Anderson, the drawer, intended that Schuster should use the check or its proceeds to accomplish the payment of a particular automobile, and that was done; (2) Schuster was authorized to use the check in the manner he did; (3) no loss resulted from the way the check was indorsed; (4) Schuster was not the agent of the Auburn Automobile Company and there was no fraud in the transaction; (5) there can be no forgery where there is no intent to defraud; (6) Anderson's failure to make any complaint until three months after the check was charged to his account, and for over two months after he knew or could have known that Schuster had indorsed and deposited the check to his own account, bars his claim; (7) there is no proof that the indorsement of the name of the payee, the Auburn Automobile Company, was forged or unauthorized.

The first four of these points are answered by the fact that the check was paid without any order from the payee. The intention of the drawer and the authority he intended to confer in regard to the check are shown by the check itself. Schuster had no authority to use the check or its proceeds except after its indorsement by the payee. Anderson lost the amount of the check, for Schuster got the money and disappeared with the car. The fifth point has no application to this case. Section 23 of the Negotiable Instrument law of June 5, 1907, provides: "Where a signature is forged or made without authority, it is wholly inoperative, and no right to retain the instrument or to give a discharge thereof, or to enforce payment thereof against any

party thereto, can be acquired through or·under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." Whether the indorsement purporting to be that of the payee was a forgery or not it was certainly without authority of law. The sixth point concerns Anderson's supposed negligence in not sooner discovering and reporting the unauthorized indorsement. This indorsement was not one with which Anderson might be supposed to be familiar. He probably received this check back from the bank soon after December 1. He knew that he had given the check and there was nothing suspicious about the indorsement of the payee to make him doubt its validity. It was only after his return from Florida, when he found Schuster's place closed and Schuster and the car gone, that upon inquiry of the automobile company he learned that it had never indorsed and had never had the check. He then promptly notified the plaintiff of the fact. The defendant by its indorsement guaranteed the indorsement by the payee of the check and the maker was under no legal duty to exercise care for the safety of defendant. (*Hamlin's Wizard Oil Co.* v. *United States Express Co.* 265 Ill. 156; *Gustin-Bacon Co.* v. *First Nat. Bank,* 306 id. 179; *Independent Oil Men's Ass'n* v. *Fort Dearborn Nat. Bank,* 311 id. 278.) As to the seventh point, the testimony of the manager of the payee was sufficient to show that the indorsement was without authority, and there was no evidence to the contrary.

A depositor of a bank who receives from it a statement of his account with its paid checks as vouchers is bound to examine the account and vouchers and report to the bank, without unreasonable delay, any errors which may be discovered. (*Morgan* v. *United States Mortgage and Trust Co.* 208 N. Y. 218; *Prudential Ins. Co. of America* v. *National Bank of Commerce,* 227 id. 510; *Dana* v. *National Bank,* 132 Mass. 156; *Leather Manufacturer's Nat. Bank* v. *Morgan,* 117 U. S. 96.) This rule does not extend to an ex-

amination of the indorsements of the payee of checks to ascertain their genuineness. (*Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219; *Welsh* v. *German Nat. Bank*, 73 id. 424; *Shipman* v. *Bank of State*, 126 id. 318.) In the cases cited, the reason given for excluding from the rule the requirement of an examination of indorsements for the purpose of determining whether they are genuine is that the depositor has no greater knowledge on the subject of the genuineness of the signature of the payee than the bank. In *Jackson* v. *Bank*, 92 Tenn. 154, it is said: "A bank is obliged by custom to honor checks payable to order and pays them at its peril to any other than the person to whose order they are made payable. It must see that the check is paid to the payee therein named upon his genuine indorsement or it will remain responsible." In *Jackson Paper Co.* v. *Commercial Bank*, 199 Ill. 151, we cited this case and quoted from the opinion with approval the following: "No equitable considerations can be invoked to soften seeming hardships in the enforcement of the laws and rules fixing liability on persons handling commercial paper. These laws are the growth of ages and the result of experience, having their origin in necessity. The inflexibility of these rules may occasionally make them seem severe, but in them is found general security."

The municipal court should have rendered judgment against the defendant for the money paid to it without authority, together with five per cent interest thereon from February 2, 1926, the date of the plaintiff's demand for its re-payment.

The judgments of the Appellate Court and of the municipal court are reversed, and the cause is remanded to the municipal court for a new trial.

*Reversed and remanded.*