James W. MOORE, and Elizabeth
D. MOORE, Plaintiffs and
Respondents

v.

Juel A. LIUM and Irma Jane Lium and
Northwestern Equipment Company of Mi-
not, North Dakota, domestic corporation,
Defendants and Appellants.

No. 7587.

Supreme Court of North Dakota.

Jan. 28, 1957.

McGee & Van Sickle, Minot, for appellants.

Joseph J. Funke, Minot, Strutz, Jansonius & Fleck, Bismarck, for respondents.

SATHRE, Justice.

The plaintiffs bring this action to foreclose two chattel mortgages executed by the defendants Juel A. Lium and Irma Jane Lium. On March 25, 1950 the plaintiffs loaned to the defendants $10,000 and the defendants executed a promissory note in that sum due March 25, 1953 with interest at 6% per annum payable annually. At the same time and place the defendants executed a chattel mortgage to secure payment of said described note. The property covered by the mortgage consisted of certain highway construction equipment, which the defendants had purchased from the Anderson Construction Company of Thief River Falls, Minnesota under a conditional sales contract. The $10,000 represented by the above described note was used by the defendants as a first payment on the conditional sales contract with the Anderson Construction Company.

On May 19, 1953 the plaintiffs loaned to the defendants another $10,000 for which the defendants executed a promissory note payable two years after date with interest at 6% per annum payable annually. At the same time and place and for the purpose of securing payment of said described note the defendants executed their chattel mortgage covering practically the same property as was contained and described in the mortgage first executed; that is highway construction equipment. This second loan obtained by the defendants from plaintiffs was used to pay the balance due upon the conditional sales contract with the Anderson Construction Company.

The defendants were residents of Ward County and had their place of business at Minot, North Dakota. The mortgage executed by the defendants on March 25, 1950 was filed in the office of the register of deeds of Ward County on the 22nd day of October 1954, and was filed in the office of the register of deeds, Renville County, March 11, 1955. The mortgage executed by the defendants on the 19th day of May 1953 was filed for record in the office of the register of deeds of Ward County, North Dakota on the 26th day of May 1953 and was filed in the office of the register of deeds of Renville County, March 11, 1955.

The defendants defaulted in the payment of the two notes referred to herein and thereupon the plaintiffs brought this action to recover the amount due thereon and for the foreclosure of the said two chattel mortgages.

The principal place of business of the defendants was at Minot, North Dakota, but they had highway construction contracts in several counties of the State and also in the State of Montana. In the summer of 1954 the defendants doing business as Lium Construction Company had a highway construction contract in Renville County, North Dakota. Sometime prior to February 1955 the Modern Machine Works, a North Dakota corporation of Bismarck, North Dakota, brought action against the defendants Juel A. Lium and Irma Jane Lium for services for repairing their highway construction equipment and obtained a judgment by default against them in the sum of $1,544.41, which on February 3, 1955 was transcribed to the district court of Renville County, North Dakota. On February 14, 1955 the sheriff of Renville County at the request of the Modern Machine Works caused a warrant of attachment to be issued by the clerk of the district court of Renville County, North Dakota. By virtue thereof the said sheriff of Renville County, North Dakota attached certain highway construction equipment situated in Renville County, belonging to the defendants Juel A. Lium and his wife Irma Jane Lium and sold the

same at execution sale. The highway equipment thus sold was a part of the property covered by the mortgages executed by the defendants Juel A. Lium and Irma Jane Lium, his wife, to the plaintiffs herein. At the execution sale the Northwestern Equipment Company of Minot, North Dakota, a corporation, became the purchaser of the said described property for which it paid $1,118.36. Thereafter on petition by the plaintiffs the said Northwestern Equipment Company of Minot, North Dakota was impleaded as a party defendant in this action and it served and filed its answer alleging that it was a creditor of defendants Juel A. Lium and Irma Jane Lium, and that it was a subsequent purchaser and incumbrancer of the property in good faith and for value at a public execution sale in enforcement of a valid judgment; that when the mortgages claimed by the plaintiffs were filed in Ward County, the property mortgaged was not in Ward County and that no mortgages or other liens upon said property had been filed in Renville County or elsewhere and that the defendant purchased the same free and clear of all mortgages or other liens.

On April 25, 1955 the plaintiffs posted a bond and obtained a warrant of seizure and seized and took possession of the property purchased by Northwestern Equipment Company of Minot for the purpose of foreclosure and now have possession thereof.

The plaintiffs contended at the trial that under and by virtue of the mortgages executed to them by the defendants Juel A. Lium and Irma Jane Lium they had a lien superior and paramount to the claim of the Northwestern Equipment Company of Minot.

The defendant Northwestern Equipment Company of Minot contended that when it became a purchaser at the execution sale under the judgment of the Modern Machine Company against the Liums it acquired title to the property purchased free and clear of any lien or claim of the Liums as owners and free and clear of any lien or claim of the plaintiffs by virtue of their mortgages.

The case was tried to the court without a jury. The trial court found for the plaintiffs and rendered judgment in their favor in the amount due upon the two notes referred to herein and ordered foreclosure of the mortgages and that the proceeds thereof be applied to the payment of the amount on the judgment of the plaintiffs. From this judgment the defendant Northwestern Equipment Company of Minot appealed to the Supreme Court and demanded a trial de novo.

The appellant assigns numerous specifications of error, but they present but one question, namely whether the judgment of foreclosure of the plaintiffs of their mortgages against the defendants Juel A. Lium and Irma Jane Lium is superior to the title acquired by the defendant Northwestern Equipment Company of Minot as a purchaser at the execution sale under the judgment of the Modern Machine Works.

The first contention of the defendant Northwestern Equipment Company of Minot is that when it became the purchaser at the execution sale it thereby acquired an absolute title to the property purchased free and clear of any other incumbrances and that as to such title any claims of the Liums or of the plaintiffs herein were null and void and of no effect.

The rule is settled however that the doctrine of caveat emptor applies to execution sales, and that purchasers at such sales must take notice of the title for which they bid and that there is no implied warranty of title. The general rule applicable in such cases is stated in 33 C.J.S., Executions, § 287, pages 570–571 as follows:

"Except where fraud intervenes, the rule is well settled that the doctrine of caveat emptor applies to execution sales, and that purchasers thereat must take notice of the title for which they bid; thus there is no implied warranty of title. However, where

there is an express warranty as to the quantity of property on sale, the doctrine of caveat emptor does not apply as to quantity.

"Subject to the exceptions considered later in this subdivision, the purchaser under a valid execution sale takes just what title or interest defendant in the execution has, no more or no less; and, except in so far as he may have the right to redeem, see § 253 supra, the defendant loses all the title and interest he had in the property. Thus the purchaser at an execution sale, even though in good faith, acquires no title where the judgment debtor had none, as where he transferred it before the lien of the judgment attached to it."

And in 21 Am.Jur., Executions, Sec. 280, page 140 it is stated:

"The doctrine of caveat emptor, applies in full force to purchasers at execution sales, who are said to buy at their own risk and peril and upon their own knowledge and judgment, where there is no fraud or misrepresentation, whether the property consists of personalty or real estate. Generally, the rule of caveat emptor applies to defects of title."

■ Under the rule stated it follows that the title acquired by the Northwestern Equipment Company of Minot could not cut off prior valid claims or other encumbrances in force at the time of the execution sale. If therefore, the plaintiffs at the time of the execution sale, under their mortgages had a prior lien upon the property sold the validity of their lien was not affected by the execution sale.

It must follow therefore that the title acquired by the Northwestern Equipment Company of Minot at the execution sale was subject to any existing prior valid liens upon the property purchased.

It is next contended by the Northwestern Equipment Company of Minot that it is a creditor in good faith for value without notice by virtue of an assignment to it of an open account of the Northwestern Equipment Company of Fargo against the Liums and by virtue of a note placed in its hands for collection by the Fargo Company executed by Liums in the sum of $4,000.

It appears from the evidence that on or about June 13, 1952 the defendant Juel A. Lium entered into a rental contract with the Northwestern Equipment Company of Fargo, for the use of a Crawford tractor TD-18 Model International Harvester Company equipped with an Isaacson bulldozer and Isaacson winch. This rental contract provided for a purchase option permitting the Liums to purchase the machine and to apply the rental payments upon the purchase price. Sometime in January or February of 1953 the rental contract was converted into a sales contract, Lium having exercised his option to purchase the tractor. The purchase price stated in the contract was $5,493.57. Thereafter and in August 1953, Lium bought another tractor from the Northwestern Equipment Company of Fargo. In this transaction he traded in the first tractor for which he was allowed $4,800 which was credited on the purchase price of the second tractor. The Northwestern Equipment Company of Fargo paid $4,000 to a bank in order to clear title to the first tractor purchased by Mr. Lium and he gave the Equipment Company a note signed by himself and his wife in the sum of $4,000, defendants' exhibit A.

On March 14, 1955 the Northwestern Equipment Company of Fargo, a corporation (not a party to the present action) assigned to the Northwestern Equipment Company of Minot an open account against the Liums in the sum of $2,030.68, defendants' exhibit E, together with interest. The Equipment Company of Fargo also placed with the Equipment Company of Minot for

collection the note for $4,000 executed by the Liums to the Northwestern Equipment Company of Fargo at the time of the purchase of the second tractor. The Minot Equipment Company had an open account against the Liums in the sum of $3,355.72 for highway equipment parts furnished during the year 1954.

The Northwestern Equipment Company of Minot claims that when these parts were furnished to the Liums it had no knowledge of the indebtedness of the Liums to the plaintiffs or of the mortgages securing payment thereof. These parts were furnished in 1954. The property for which the parts were furnished was in Minot, Ward County, North Dakota at the time. The Liums had their business office in Minot. The mortgage executed by the Liums on May 19, 1953 was filed in Ward County, May 26, 1953 and was therefore constructive notice of its existence to the Equipment Company of Minot.

The manager of the Northwestern Equipment Company of Fargo testified that when credit was extended to the Liums as shown by the assignment, defendants' exhibit E, and when it accepted the note for $4,000 executed by the Liums which was placed with the Northwestern Equipment Company of Minot for collection, it had no knowledge of their financial standing, or of their indebtedness to the plaintiffs and the mortgages given to secure payment thereof; that credit was extended to the Liums because of the apparent freedom of their highway equipment from incumbrance; that it had the status of a creditor or purchaser in good faith for value without notice of any existing liens or incumbrances, and that therefore the mortgages of the Liums to the plaintiffs were void. The defendant Northwestern Equipment Company of Minot contends that as a holder of the said assignment, and having said note for collection it also had the status of creditor in good faith for value without notice.

In support of its contention that it is a purchaser or creditor in good faith without notice of existing liens or incumbrances the defendant Northwestern Equipment Company of Minot relies upon Section 35–0406, NDRC 1943, and the following cases: Union National Bank v. Oium, 3 N.D. 193, 54 N.W. 1034, and Hanson v. Blum, 53 N.D. 526, 207 N.W. 144. Section 35–0406, NDRC 1943 reads as follows:

"A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith for value, unless the original or an authenticated copy thereof is filed by depositing it in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is situated at the time of filing."

The issue in the Oium case was one between the plaintiff, a mortgagee, and the defendant, an attaching creditor of the mortgagor. The defendant in that case relied upon Section 4379, Compiled Laws of North Dakota which Section is identical with Section 35–0406, NDRC 1943. The mortgage involved in that case had not been filed in the office of the register of deeds when the defendant attaching creditor, seized the property. It was contended that since the mortgage was not on file when defendants seized the property it was void as to him. It developed however that the claim of the defendant in that case had been incurred prior to the execution of the mortgage involved, and the court held in an opinion written by Chief Justice Corliss that where a creditor attaches personal property covered by mortgage, between the execution and delivery of the mortgage and the filing thereof, his lien is not superior to that of the mortgagee, under Section 4379 (now Section 35–0406, NDRC 1943) declaring such mortgage void as to creditors unless filed, where the debt for which he attaches existed before the giving of the mortgage, and the creditor had not altered

his position to his detriment since the mortgage was given, and before filing thereof.

The court further held in that case that [3 N.D. 193, 54 N.W. 1037]:

"A subsequent mortgagee for present value is not protected if he has notice of the existence of the unfiled mortgage when he takes his security and extends the credit."

We quote further from the opinion:

"Again, notice of the unfiled chattel mortgage destroys his right to protection. The reason is that he has not altered his position to his detriment relying on the freedom of the property from encumbrance. He knows that it is encumbered. Why should not the word 'creditors' be interpreted in the light of this same policy of the law?"

An issue identical with the issue in the Oium case was before this court in the case of Hanson v. Blum, supra. In that case this court speaking through Judge Nuessle said [53 N.D. 526, 207 N.W. 148]:

"We hold, then, that, since the defendant, Blum, knew the Hanson mortgage was unpaid at the time Blum took his mortgage he was not a subsequent incumbrancer in good faith, in so far as that mortgage secured indebtedness incurred prior to December 5, 1920, when the Hanson mortgage should have been renewed. We also hold that as to any unsecured indebtedness owing by Bjerre brothers to Blum which was incurred when Blum did not know the Hanson mortgage was unpaid, and after the expiration of the three-year period beginning December 5, 1917, Blum is not in a position to attack the validity of Hanson's mortgage by reason of his possession of the property involved through foreclosure of his mortgage. But we further hold that as to any indebtedness incurred by Bjerre brothers after December 5, 1920, when Blum had no notice of the fact that the Hanson mortgage was still unpaid, though thereafter secured by the mortgage of August 1921, when he had notice, such mortgage is superior to the Hanson mortgage by reason of Hanson's failure to renew; That is, notice at the time the credit is given, rather than at the time the security is taken, determines priority over an unfiled or unrenewed mortgage."

There is a dispute in the evidence as to whether the Northwestern Equipment Company of Fargo was a creditor or purchaser without notice of the Lium indebtedness and mortgages to the plaintiffs. It is true that the mortgage executed by the Liums to the plaintiffs March 25, 1950 was not filed in Ward County until October 22, 1954 and in Renville County March 11, 1955 and that the second mortgage executed May 19, 1953 was filed in Ward County May 26, 1953, and in Renville County March 11, 1955. The defendant Juel A. Lium was called for cross-examination under the statute and he testified positively that in January or February 1952, when he made the purchase of the first tractor from the Northwestern Equipment Company of Fargo he told its manager N. O. Jones, about his financial standing and indebtedness and mortgages to the plaintiffs. We quote from his testimony:

"Q. Getting back to Mr. Jones and Mr. Johnson, do you recall having conversations with either or both of them regarding the obligation due to Mr. Moore? A. Mr. Jones may have forgotten this but I distinctly remember at the time of the purchase of the first tractor that I told him my entire financial standing, including Mr. Moore or Anderson at that time.

"Q. That would be in what year? A. That would be in 1953, February or January of 1953.

"Q. Have you had conversations with him about these things more than once? A. Yes, I have.

"Q. And at any time was the information regarding Mr. Moore's mortgage withheld from him? A. No, sir.

"Q. Mr. Lium, you let me refresh my memory. You testified at the time the purchase of the first tractor you told Mr. Jones of your entire financial standing? A. Yes, sir.

"Q. Where did you talk to him? A. The contract was brought up to my room in the Grand Pacific Hotel in Bismarck.

"Q. Is that where you saw · Mr. Jones? A. Yes, sir.

"Q. When did that happen? A. That's the date on the original contract on the first tractor and I believe Mr. Jones said it was in January. I am under the assumption it was February.

"Q. What year? A. 1953.

"Q. That it would be in January or February of 1953? A. Yes.

"Q. Now, at that time your total indebtedness to Mr. Moore was how much? A. Ten thousand dollars.

"Q. Do you recall your conversation with Mr. Jones? A. Well, not specially, I remember that.

"Q. Well, now, just a second so that I can get it so that I understand it. A. Yes, sir.

"Q. Did you mention to Mr. Jones that you had given a mortgage to Mr. Moore? A. Yes, sir.

"Q. Do you recall mentioning that? A. Yes, sir, I do.

"Q. Of your own knowledge? A. Yes, sir.

"Q. Now, do you recall telling Mr. Jones that you had given a promissory note to Mr. Moore? A. No, I don't.

"Q. Do you recall telling Mr. Jones the amount of the mortgage that you had given to Mr. Moore? A. Yes, sir.

"Q. Do you recall whether you told Mr. Jones the date of the mortgage? A. Well, there was no specific date mentioned but I told him that's the way I got started in business.

"Q. Well, now do you recall the conversation you had with Mr. Jones? A. Well, not other than what I have said, we, Mr. Jones and I were very good friends and we—

"Q. (Interposed) just tell us what you can recall you said to him? A. I told him I had a mortgage on the equipment to Jim Moore for ten thousand dollars and a Conditional Sales Contract to Anderson Construction Company for ten thousand dollars.

"Q. That was the information you gave him? A. Yes."

N. O. Jones testified that he could not recall having such conversation with Mr. Lium nor could he remember the date when or the place where the contract was entered into for the sale and purchase of the first tractor. With reference thereto he testified as follows:

"Q. Mr. Jones, you have just heard the testimony of Mr. Lium regarding a conversation had between yourself and himself in January or February of 1953 in the Grand Pacific Hotel in Bismarck? A. Yes.

"Q. Do you recall the circumstances of the conversation? A. No, frankly I don't.

"Q. Do you recall the incident at all? A. No, I can't say that I do.

"Q. Do you recall where the contract was entered into between yourself and Mr. Lium regarding the purchase of the first tractor? A. No, I honestly can't recall.

"Q. Do you recall where the contract was entered into regarding the

purchase of the second tractor? A. Oh, yes, that was in the office at Fargo and I remember that very distinctly.

"Q. Do you recall when the second tractor was bought? A. Yes.

"Q. When was it bought? A. I would have to refer to my notes again, about August 15.

"Q. Of what year? A. Of 1953.

"Q. And when was the first tractor bought? A. That contract was signed in January of '53, purchase was made in June, 1952.

"Q. You mean the contract to rent was made in June, '52 and purchase was made in January, '53? A. That's right, it was a rental to purchase option originally."

At the trial the parties stipulated that the affidavits of Don Moore and R. J. Comstock could be admitted in evidence in the case as the testimony of the said affiants and accepted and considered by the court as if said statements had been made in open court under oath.

Don Moore stated in his affidavit that he was a witness to the sales contract entered into in January 1953 between Northwestern Equipment Company of Fargo and Juel A. Lium, and that he recalls the conversation at the time said contract was made and that there were present in the hotel room at Bismarck, North Dakota, at the time Juel A. Lium, Don Moore and N. O. Jones; that he recalls that Juel A. Lium did not discuss with Don Moore any loans or financial arrangements with James W. Moore and Elizabeth D. Moore, the plaintiffs in this action.

R. J. Comstock stated in his affidavit that he did not recall the incident of witnessing the sales contract described, but he does recall that it was common practice to meet with Mr. Lium in his hotel room or the hotel room of Mr. Jones; that at no time in his presence did Juel A. Lium discuss the matter of his financial arrangements; that he had no knowledge whatever of the claims of James W. Moore or Elizabeth D. Moore against Juel A. Lium or the Lium Construction Company.

The Northwestern Equipment Company, of Fargo was a general creditor of the defendants Juel A. Lium and Irma Jane Lium. It had no statutory liens upon their property. The question is therefore whether it had actual notice of the indebtedness and mortgages of the Liums to the plaintiffs when it sold them the first tractor in January 1953, or whether credit was extended because of the apparent freedom of the property of the Liums from incumbrance. We have set forth herein the facts which clearly show a conflict in the evidence as to whether the Northwestern Equipment Company of Fargo had such actual notice. The trial judge found that the title acquired by the defendant Northwestern Equipment Company of Minot at the execution sale of the property here involved was subject to the mortgages of the plaintiffs. While the case is here for trial de novo and we are not bound by his findings, nevertheless they are entitled to appreciable weight. We conclude that the preponderance of the evidence establishes that at the time the Northwestern Equipment Company of Fargo sold the first tractor to the Liums it had actual notice of their indebtedness to the plaintiffs and the mortgages securing payment thereof, and therefore cannot be held to have extended credit on the apparent freedom of the property involved from incumbrance. It must follow also that the Northwestern Equipment Company of Minot as assignee of the Fargo Company acquired only the rights of its assignor.

The judgment of the district court is affirmed.

GRIMSON, C. J., and JOHNSON, BURKE and MORRIS, JJ., concur.