CONSUMER SAVINGS BANK *vs.* COMMISSIONER OF BANKS.

Worcester.  March 7, 1972. — May 2, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Savings Bank.*

A savings bank, under the definition of a deposit book in G. L.
c. 168, § 1, and under § 26, and if its by-laws so provide, is entitled
to permit its depositors to make withdrawals from a "no passbook"
account by means of a withdrawal order in negotiable form
without requiring the depositor or his representative to appear at
the bank's offices; the use of such negotiable withdrawal order
does not create a new account unauthorized by G. L. c. 168. [718–719]

By-laws of a savings bank providing that "withdrawals may be made
by presentation of deposit book . . . or other written instrument"
authorized use of a withdrawal order in negotiable form.  [718]

BILL IN EQUITY filed in the Superior Court on October
21, 1971.

The case was reported by *Meagher,* J.

*Warren C. Lane, Jr.* (*William J. LeDoux, Erwin H.
Miller, & William B. Field* with him) for the plaintiff.

*Lawrence T. Bench,* Assistant Attorney General
(*Walter H. Mayo, III,* Assistant Attorney General, with
him) for the defendant.

REARDON, J.  This is a bill for declaratory relief seek-
ing a declaration whether the plaintiff, a savings bank
(bank) subject to G. L. c. 168, has authority to arrange
for the transfer of funds from savings accounts by with-
drawal orders in negotiable form without requiring the
depositor or his representative to appear at the bank's
offices.  The case was reported without decision by a
Superior Court judge upon the bill and exhibits, the
answer, and a case stated with exhibits.

The proposed form of withdrawal order possesses the
attributes of negotiability required by the Uniform Com-
mercial Code, G. L. c. 106, § 3-104 (1), as appearing in
St. 1958, c. 542, § 5.  It is an unconditional order to the
bank signed by the drawer and depositor to pay a speci-

fied sum, and it is payable to order and on demand. It is contemplated that these withdrawal orders would be available to the depositor on his agreement that they are subject to such notice requirements as may be adopted by the bank or the bank commissioner pursuant to G. L. c. 168, § 26. The negotiable withdrawal orders would be drawn on a no passbook account and would be payable through a commercial bank. The orders would be presented to the bank for payment in a daily clearing, and payment would occur at its offices. The bank would make returns on stop payment orders, overdrafts, and so forth, and would handle signature verifications.

The bank on July 28, 1970, sought approval of the commissioner for the plan. On September 28, 1970, the commissioner denied its request.

We see no reason in law why the bank should be prohibited from putting its plan into effect. General Laws c. 168, § 26, as amended through St. 1971, c. 354, § 2, provides in part as follows: "The deposits in such corporation may be withdrawn at such time and in such manner as the by-laws direct, subject to the provisions of . . . [certain sections of this chapter] and of other applicable provisions of law." The bank's by-laws provide in art. IX, cl. 2, the following: "Withdrawals may be made by presentation of deposit book, other evidence of deposit or other written instrument, by the depositor, his legally appointed representative or another on a written order." The negotiable withdrawal order is permissible under art. IX, cl. 2, of the bank's by-laws because it is an "other written instrument" and, also, because under G. L. c. 168, § 26, quoted above, such method of withdrawal is authorized.

We do not agree with the commissioner that use of the negotiable withdrawal order creates a new account not authorized by c. 168. Those sections of c. 168 cited by the commissioner in support of her argument do not prescribe procedures for the withdrawal of deposits. They are concerned principally with the types and conditions of the deposits themselves. Thus, c. 168, § 21, relates to deposits

made in trust and stipulates those who may receive payment but does not spell out the mechanics of withdrawal. The same comment can be made of § 22A concerning special notice account deposits. In fact it would appear that G. L. c. 168, § 26, leaves the establishment of methods of withdrawal to the individual banks. In *Brannan* v. *Eliot Five Cents Sav. Bank,* 211 Mass. 532, we found nothing in the statute or by-laws to prohibit assignment of a depositor's savings account after delivery of the bankbook and order by the depositor to the bank. The circumstances here are not dissimilar.

The commissioner contends that in all savings accounts a passbook is required for withdrawal because certain sections of c. 168 dealing with specialized savings accounts require "deposit . . . [books] evidencing deposits received under . . . [these sections]" to be particularly titled. See §§ 22A and 22B. But § 1 of c. 168, as amended by St. 1962, c. 169, § 1, defines deposit book as "the book *or other instrument* issued to the depositor as evidence of his deposit" (emphasis supplied). This definition guides the reading of §§ 22A and 22B, and would seem to negate the requirement of a passbook. A negotiable withdrawal order qualifies as an "other instrument" evidencing deposit. As was said in *Savings Bank* v. *Bank Commr. of Maryland,* 248 Md. 461, 475, "If . . . a depositor of the Bank, on making a withdrawal, has the option of requesting cash, or a treasurer's check, or of purchasing a money order, . . . according him a fourth option of drawing a check on his own account . . . is a distinction without a difference." That language is most persuasive and helpful in the determination of this case.

A final decree is to be entered containing a binding declaration that the bank is entitled to permit its depositors to make withdrawals by means of a withdrawal order in negotiable form, which order may be employed in the withdrawal of bank deposits as proposed and indicated in the case stated.

*So ordered.*