WILLOW CITY FARMERS ELEVATOR,
Plaintiff and Appellee,

v.

VOGEL, VOGEL, BRANTNER & KELLY, Defendants and Appellants,

and

Pioneer State Bank, Towner, North Dakota, First State Bank of New Rockford, State Bank of Bottineau and Hayden Thompson, Defendants and Appellees.

Civ. No. 9416–A.

Supreme Court of North Dakota.

July 13, 1978.

* HATCH, District Judge sitting for PEDERSON, J., disqualified.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendants and appellants; argued by Kermit Edward Bye, Fargo.

Pringle & Herigstad, Minot, for plaintiff and appellee; argued by Herbert L. Meschke, Minot.

Lamb, Schaefer & McNair, Fargo, for Pioneer State Bank.

Mattson, Williams & Hovey, New Rockford, for First State Bank of New Rockford.

PEDERSON, Justice.

This appeal involves a determination of priority to deposited funds. The Willow City Farmers Elevator sold Hayden Thompson some feed for his hogs. Thompson "paid" the elevator by a personal check in the amount of $30,000 drawn on his deposit account in the Pioneer State Bank of Towner. The check was dated November 16, 1976, and, at that time, there was a $31,707.86 balance in Thompson's checking account. Before the check was presented for payment, the state bank examiner, on November 26, 1976, took possession of the Pioneer State Bank pursuant to § 6–07–04, NDCC, and froze all accounts. While the bank was in the hands of a receiver, the elevator presented Thompson's check but it was dishonored.

Ultimately the deposit liabilities of Pioneer State Bank, including Thompson's checking account, were assumed by the State Bank of Towner. The State Bank of Towner opened for business on January 17, 1977, and was immediately served in a garnishment action which involved other

claims against Thompson. The State Bank of Towner dishonored the $30,000 check.

The elevator consequently, on April 14, 1977, sued Thompson and it is not clear whether it was a suit on the obligation (the sale of the feed) or on the dishonored check. See §§ 41-03-63(2) (3-507) and 41-03-76(1)(b) (3-802), NDCC. In answering the elevator's complaint, Thompson denied liability and, in a third-party complaint (Rule 14, NDRCivP), alleged that Pioneer State Bank, its receiver Roger B. West, and State Bank of Towner had wrongfully dishonored his check (§ 41-04-29, NDCC), thus, in effect, asking that the court assess his obligation to the elevator against the bank. The elevator's motion for summary judgment against Thompson, based only upon the $30,000 check, was granted and judgment was entered on May 5. Dismissal of the third-party complaint is not shown in the record. On May 16, Thompson appealed from that summary judgment and tried to get a stay of execution. The stay was denied and, on July 8, the elevator tried to levy execution against the Thompson checking account (Ch. 28-21, NDCC, and Rule 69, NDRCivP). On that same day, July 8, the garnishment of the account was dismissed. On December 19, 1977, we dismissed Thompson's appeal. *Willow City Farmers Elevator v. Thompson*, 261 N.W.2d 381 (N.D.1977).

The record does not disclose that a levy of the execution was ever accomplished; however, we know that the bank did not surrender the funds to the sheriff but, on July 11, deposited them with the court pursuant to authorization of § 32-11-02, NDCC, giving notice thereof to all parties concerned, including the law firm of Vogel, Vogel, Brantner and Kelly (hereinafter Vogel). There is no allegation that there was either actual or constructive seizure of the account pursuant to the execution.

Vogel had provided legal services for Thompson over a period of years and, having represented him in a United States District Court trial in 1976, billed him in December, 1976, for $37,103.57. This was not paid so, on May 5, 1977 (the same day that the elevator recovered summary judgment against Thompson), Vogel took an assignment from Thompson. The assignment was limited to $37,103.57, but described Thompson's personal checking account ($31,707.86), other deposit accounts, and the contents of four safety deposit boxes. The accumulative total of the identified accounts was $85,806.22, not including the contents of the safety deposit boxes.

When the trial court determined that the elevator's claim to the checking account took priority over the Vogel claim, this appeal resulted. Two questions are presented:

I. Is an assignment of the balance of a checking account (subject to a dollar limitation) effective?

II. If such an assignment is effective, does the assignee acquire, as of the date of the assignment, priority over other claims against the account?

Because the elevator levied against the checking account only, we consider only the effect of the assignment on that account.[1]

## I.

■ The common law rule which denied the validity of an assignment of a chose in action has been modified so that, under the "modern rule," the assignability of things in action is the rule and nonassignability the exception. See 6 Am.Jur.2d Assignments, § 29, and cases cited therein.

■ In this State, "a chose in action may be transferred either by parol or by written assignment." *Roberts v. First Nat. Bank*, 8 N.D. 474, 79 N.W. 993 (1899), syllabus 3. See, also, *Hecker v. Commercial State Bank*, 35 N.D. 12, 159 N.W. 97, 98 (1916), where this Court said:

1. It would seem that there should be adequate funds in the hands of the State Bank of Towner to satisfy the assignment to Vogel without resorting to Thompson's personal checking account. The trial court was apparently satisfied that there were not sufficient funds. We do not understand this to be disputed here.

"It now seems to be generally understood, indeed, that . . . assignments of choses in action are valid . . .,"

and *International Harvester Company v. Hanson*, 36 N.D. 78, 161 N.W. 608, 610 (1917), where this Court further said:

"The law requires the observance of no particular formality in the assignment of a chose in action."

Reasons for not permitting the assignment of Thompson's checking account have not been forcefully presented in this case. Certainly the assignment of checking accounts has not been unknown. Most legal discussion on the subject involves early cases of assignments for the benefit of creditors. See, i. e., *First Nat. Bank of Cincinnati v. Coates*, 8 F. 540 (Cir.Ct., W.D.Mo.1881); *Voorhes v. Hesket*, 1 Ohio C.C.R. 1 (5th Cir. 1885). See, also, *Baker v. National City Bank of Cleveland*, 387 F.Supp. 1137 (N.D. Ohio, E.D.1974), affirmed, *Baker v. National City Bank of Cleveland*, 511 F.2d 1016 (6th Cir. 1975). Other depositors have attempted to transfer an interest in a bank account to an attorney by "assignment." See *Bowie v. Union Bank*, 11 Cal.App.3d 807, 90 Cal.Rptr. 103 (1970). We, accordingly, and for the purpose of this case, determine that a checking account may be transferred by assignment. We do not decide that an assignment of a checking account, under the circumstances of this case, must be honored by the bank.[2]

## II.

The assignment of Thompson's checking account occurred immediately after summary judgment had been entered in an action by the elevator, on a check drawn on that account. Thompson, the losing defendant in that action, assigned the account to Vogel, the law firm representing him in that

action (and others). The elevator could not levy execution on the checking account immediately because of the garnishment action concerning the account. Immediately upon the dismissal of the garnishment action, the elevator levied upon the account. But, by then, notice of the assignment had reached the bank.[3]

■ Faced with the competing claims of Vogel, the elevator and others, the bank paid the funds into court rather than honor one of the claims (to the necessary exclusion of the others). The object of the assignment was to establish a claim to the account superior to the judgment held by the elevator. The question for this Court is: Did the assignment succeed in that object? We hold that it did not.

### (a)

■ In this case, both parties concede that the assignment to Vogel is an "item" as that term is defined in § 41–04–04(1)(g) (4–104), NDCC; however, they are not in complete agreement as to the need for "final payment" under § 41–04–23(1) (4–213), NDCC, or "late return" under § 41–04–26(4–302), NDCC, to establish the obligation of the bank nor the consequence thereof upon the priority determination in this case. See, § 41–04–27(4–303), NDCC, and the official comment in 2A Uniform Laws Annotated, Uniform Commercial Code, at 108, as follows:

"Final payment of an item is important for a number of reasons. It is one of several factors determining the relative priorities between items and notices, stop orders, legal process and set-offs (Section 4–303). It is the 'end of the line' in the collection process and the 'turn around' point commencing the return flow of proceeds. It is the point at which many

---

2. See § 41–03–04(3–104), Form of negotiable instruments, and § 41–03–46(3–409), NDCC, and the discussion in *Consumers Savings Bank v. Commissioner of Banks*, 361 Mass. 717, 282 N.E.2d 416 (1972), for the control by the bank itself of the methods which may be used for transferring bank accounts.

3. The record nowhere discloses when or if the bank actually received notice of the assignment. Vogel argued that the bank received notice on May 5, 1977, the day the assignment was made. The elevator argued, but not strenuously, that there was no proof that the bank ever received notice. The trial court was apparently satisfied that notice was received, and received before the levy was attempted.

provisional settlements become final. See Section 4–213(2). Final payment of an item by the payor bank fixes preferential rights under Section 4–214(1) and (2)."

Section 41–04–27(2) (4–303), NDCC, provides that "items" may be accepted, paid, certified, or charged to the indicated account in *any order convenient to the bank*. In 3 Anderson, Uniform Commercial Code, 2d Ed., § 4–303:6, it is stated:

"Items which may otherwise be accepted, paid, certified, or charged by a bank have no priority or order of payment as between themselves. The bank may handle such items in any order which is convenient to it. Thus, there is no requirement that a bank pay checks in any particular order, regardless of the status of the customer's account. Likewise the bank has the power, if it so chooses, to pay first those instruments for which it is itself liable.

"When the account is insufficient to pay all items, the bank may charge items against the account in any order convenient to the bank."

At this stage of the proceedings, and because the bank chose to handle neither item, we do not concern ourselves with a determination of the duty owed by the State Bank of Towner to either the elevator or Vogel. By not "handling" either item, the bank failed to establish any priority between them. As a result § 41–04–27(2) (4–303), NDCC, provides no aid to us in our determination of priorities.

### (b)

■ Much argument is made over the question of whether or not the assignment created a security interest under § 41–09–02(2) (9–102), NDCC, and the effect of § 41–09–04(12) (9–104), NDCC, which excludes the application of Chapter 41–09 to transfers of deposit accounts. The elevator argues, in effect, that Vogel treated the assignment as creating a security interest and that that invalidates it entirely. We do not agree. The fact that there can be no security interest in a bank deposit account does not affect the validity of an assignment of that account for other purposes.

### (c)

■ The contention is made that the check held by the elevator gives the elevator no right, title or interest in the checking account. It is well settled that a check is not an assignment. See 5A Michie, Banks and Banking, § 203, p. 536 (Permanent Ed. 1973), and cases cited from federal courts and thirty-three states. The rule is set forth in § 41–03–46(3–409), NDCC:

"Draft not an assignment.—1. A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

This means that until the check is accepted, the bank is not liable. But the liability of the bank is not at issue here, and the bank is not a party. The elevator has not argued that the check it holds is an assignment, but that the check (or judgment) it holds is superior to Vogel's assignment. Nothing in § 41–03–46, NDCC, answers that question. The payment of the account into court, pursuant to § 32–11–02, NDCC, was proper. The bank cannot settle the equities among the parties, except pursuant to the laws of banking. See, *Cosmopolitan State Bank v. Lake Shore T. & S. Bank*, 343 Ill. 347, 175 N.E. 583 (1937).

### (d)

Having satisfied ourselves that the arguments made by the parties have no application to the specific facts at hand, we proceed to a further consideration of the issue of priority.

■ The Uniform Commercial Code "is not a comprehensive codification of commercial law." White and Summers, Uniform Commercial Code, West, § 2, Introduction, p. 6. These authors say that "Section 1–103 is probably the most important single provision in the Code." Section 41–01–03(1–103), NDCC, provides:

"Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

We conclude therefrom that the common law of assignment remains in effect in North Dakota, as does the law relating to debtor and creditor relationship (Title 13, NDCC). There are no cases on the assignment of a checking account by a solvent debtor in North Dakota, and a paucity of such cases in other jurisdictions. We conclude, upon examination of the existing authority, that the district court was correct in its determination that the elevator was entitled to payment out of the Thompson checking account.

█ A bank has no authority to pay a check *drawn* after it has received notice of the assignment of the drawer. *Covert v. Rhodes*, 48 Ohio St. 66, 27 N.E. 94 (1891).

█ The bank may (if it so chooses) pay checks drawn prior to its receipt of a notice of assignment, but received after the notice. Section 41-04-27(2) (4-303), NDCC. In the instant case, the check was drawn on November 16, 1976, was presented to the Pioneer State Bank about a month later, and was presented to the successor bank, the State Bank of Towner, on January 17, 1977. The State Bank of Towner received notice of the assignment on May 5, 1977. It is true that the check had not been paid before the notice of assignment reached the bank, but that does not require that the assignment prevail. The reason is that an assignment is not a stop-payment order. A stop-payment order is one which countermands a previous valid order to draw money from a depositor's account. See §§ 41-04-27(4-303) and 41-04-30(4-403); *Drinkall v. Movius State Bank*, 11 N.D. 10, 88 N.W. 724 (1901). At no time has the bank here received an order to stop payment of the check to the elevator.

A Georgia case, *Atlanta Nat. Bank v. George*, 109 Ga. 682, 34 S.E. 998 (1900), suggests that the intention of the assignor, as to who should prevail between his assignee and the payee of an earlier issued check, is conclusive. Because we have no evidence of the intentions of Thompson at the time the assignment was made, and because his prior intention to pay the elevator is evidenced by the check, we do not reach that issue.

It appears that both items came to the court on equal footing. When the bank had an opportunity to establish priorities, it chose not to, by paying neither item. When Thompson had an opportunity to decide priorities (before the check had been reduced to judgment), he chose not to, saying, in effect, "pay both." When the district court had an opportunity to establish priorities, the check was chosen, apparently because it was the first item issued. "Between rights otherwise equal the earliest is preferred." Section 31-11-05(16), NDCC. We hold that the check drawn by Hayden Thompson in favor of the elevator was properly given priority over the assignment of the checking account made nearly six months later.

The district court determined that the elevator had a valid judgment lien based on the check. The court also determined that the elevator had priority over the assignment held by Vogel. We find no abuse of discretion in those determinations.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, J., concur.

SAND, Justice (specially concurring).

I concur in the result reached in the opinion by Justice Pederson, but primarily for reasons set out herein and on the basis that assignments in the original and technical sense referred to transfers of interest in real property [6A C.J.S. *Assignments* § 2, p. 591] and, unless otherwise specifically provided, embraced the same principles of law and equity.

In *Moore v. Lium,* 80 N.W.2d 657 (N.D. 1957), involving a chattel mortgage, the court held that the assignee acquired not only the rights of its assignor but was also chargeable with the assignor's knowledge of prior encumbrances against the property at the time of extension of credit.

In my opinion, the applicable rule of law is that in the absence of fraud, an assignment of a demand deposit (checking account in the bank) without any qualifications or limitations transfers to the assignee all of the funds in the demand deposit and all of the assignor's liabilities (outstanding checks) against the demand deposit.

The trial court, in its memorandum opinion, stated:

"In the law suit before me on March 7, 1977, Thompson filed a Third Party Complaint against the Pioneer State Bank, Roger West as Receiver of that bank, and the State Bank of Towner, the successor bank. In this Third Party Complaint Thompson states:

1. He had $31,000 in his checking account on which he drew the $30,000 check November 16, 1976, to Willow City Elevator,

2. That said account has been under the control of all the Defendants,

3. That the above check was wrongfully dishonored,

4. That he made numerous demands upon the banks to honor it,

5. That the banks 'intentionally or maliciously refused' to honor the check, and

6. That their failure to do so 'constitutes a breach of their duty of good faith' and constitutes 'bad faith.'

"In view of this pleading, did Thompson have the right to assign on May 5, 1977, this checking account to some other creditor? Especially a creditor, the Vogel law firm, that had knowledge of all the factual background? The assignment itself is a sweeping one, and apparently the Vogel law firm has filed a security instrument along with the assignment. The security instrument would be no more valid than the New Rockford Bank security instrument. The assignment assigns to the Vogel firm the sum of $37,-103.59 on May 5, 1977, for past legal services rendered to Thompson. The assignment is attached to Mr. Bye's brief of August 17 and is as follows:

'It is hereby agreed by and between the parties as follows: Hayden Thompson, for valuable consideration, hereby assigns to the law firm of Vogel, Vogel, Brantner & Kelly the sum of $37,103.59 out of any *and all monies now due and owing* from the State Bank of Towner, Towner, North Dakota, to Hayden Thompson and hereby directs and instructs the State Bank of Towner to pay said sum to Vogel, Vogel, Brantner & Kelly out of the following checking accounts, savings accounts and/or certificates of deposits that are in the State Bank of Towner and *upon which Hayden Thompson exercises control and withdrawal authority* . . . (*emphasis supplied by Court.)

Then is listed numerous accounts, including checking account under the name of Hayden Thompson in the amount of $31,-707.86.

"In view of the facts set forth above, the law of assignments and the specific statements by Thompson in his Third Party Complaint, I hold that Thompson does not have 'withdrawal authority' as set forth in the above assignment. I hold that the monies in this account are not 'due and owing' Thompson."

I agree with the trial court's reasoning and holding.

Justice VOGEL agrees with this special concurrence.