Harlan E. Moore & Company, Plaintiff-Appellant, v. Champaign National Bank, a National Banking Association, Defendant-Appellee.

Gen. No. 10,091.

Third District.

February 26, 1957.

Rehearing denied April 6, 1957.

Released for publication April 6, 1957.

<br>

John Alan Appleman, of Urbana, for plaintiff-appellant.

Thomas, Mulliken & Mamer, of Champaign, for defendant-appellee.

JUDGE CARROLL delivered the opinion of the court.

This action was brought to recover the proceeds of certain checks cashed by the defendant bank allegedly in violation of its deposit agreement with plaintiff.

There is little dispute concerning the principal facts. On or about March 2, 1951, Harlan E. Moore and Co., plaintiffs, filed with defendant the regular corporation form of signature card showing that J. W. Wilkie was authorized to sign checks for plaintiff on its general account. A similar card was filed with defendant on April 6, 1951 authorizing Wilkie to sign checks on the payroll account of plaintiff. These signature cards remained on file with the defendant until November 22, 1952 when they were canceled by H. E. Moore, president of the plaintiff corporation.

Wilkie was employed by plaintiff early in 1951 as a bookkeeper. He had charge of cash disbursements, accounts payable and purchase journal records. He also paid invoices for supplies and expenses, signed checks made to petty cash, reconciled the bank statements, made bank deposits and signed payroll checks. At the end of each month it was his duty to check the bank statements and canceled vouchers to determine whether the charges made against the bank account were correct and whether the canceled checks were in agreement with plaintiff's records.

The wages and salaries of employees and officers of plaintiff were paid by checks drawn on its payroll account with defendant. There appears to have been no deviation by plaintiff from this practice until the transactions which gave rise to this litigation occurred.

235

The payroll account was maintained by depositing therein checks drawn weekly against plaintiff's general account for the amount of the payroll disbursements. These checks and also others drawn to petty cash were signed by Wilkie.

Plaintiff is a corporation having several subsidiary divisions, one of which is the Roofing and Insulation Supply Co., which carried an account in defendant bank. Wilkie was authorized to draw checks on the account of this subsidiary and did draw checks thereon for the petty cash and payroll accounts.

At the end of each month, during the period from May 1951 through November 1952, defendant delivered to plaintiff the ledger statement showing debits and credits as entered on plaintiff's account during the month together with canceled vouchers. At the time of delivery of each monthly statement and accompanying vouchers to plaintiffs a receipt was taken by defendant. With the exception of two which were signed by H. E. Moore, president of plaintiff corporation, all of these receipts were signed by Wilkie. The form of such receipts is as follows:

"Received of the Champaign National Bank of Champaign, Illinois,

Statement of my account to Aprl. 30, 1951, with 211 vouchers showing CREDIT balance of $21,740.99 and I agree to examine same carefully, and if not correct to give notice and make all reclamations within ten days."

Plaintiff failed to give notice of any claim of error in these statements and also failed to make any reclamation within 10 days.

Shortly after his employment by plaintiff, Wilkie devised a scheme for embezzling his employer's money which he operated in the following manner: He made out and signed certain checks on plaintiff's general account payable to "cash for payroll." He presented

these checks to the bank which paid him the amounts thereof in cash, which he embezzled. He then filled in the check stub or duplicate to show the name of a supplier with which his employer ordinarily did business and made a cash disbursement entry corresponding to the check in the cash disbursement journal. When the canceled checks were returned by the bank at the end of a month, Wilkie, to whom the duty of examining and reconciling the bank statements was entrusted, would withdraw the "cash for payroll" checks and destroy the same.

By following this practice, Wilkie was able to conceal his embezzling from his employer for many months. The record shows that during that period the defendant bank cashed for Wilkie some 56 of these checks, amounting to $39,817.98.

Wilkie presented the first of the checks in question to Leroy Britton, one of defendant's tellers. On that occasion and before cashing the same Britton called the attention of Lyle Blue, another teller to the fact that Wilkie was presenting a payroll check and asked Blue for his opinion. Blue went to Britton's window and asked Wilkie why he was cashing the payroll check and if it was the intention of the plaintiff to do so in the usual course of business. Wilkie's reply was that plaintiff had crews of workmen in other areas, such as Lincoln, Decatur and Bloomington; that when these crews completed a job and returned to town, they wanted their money; that plaintiff was also employing a considerable amount of pickup labor in addition to its regular crews; that this pickup labor wanted its money every other day and this was the reason for obtaining the payroll in cash. Wilkie at that time also presented a payroll slip upon which was listed the number of $20's, 10's, 5's and 1's and pieces of silver required. Blue thereupon told Britton to go ahead and cash the check.

Wilkie's embezzlement scheme was not discovered until November 13, 1952 when an accountant for plaintiff came upon suspicious checks and check copies. The defendant was then notified of the discovery.

The complaint as amended contained five counts. Counts 1 and 5 charged defendant with breach of its duty to plaintiff as a depositor in paying out monies from its account without authority from plaintiff, giving the dates and amounts of such payments. In count 2 plaintiff relies upon Secs. 234 and 241, Chap. 98, Ill. Rev. Stat. 1953, alleging the acts of defendant in view of its knowledge of plaintiff's practice of paying all wages and salaries by check to amount to bad faith. In count 3 plaintiff relies upon negligence and alleges therein that defendant knew plaintiff paid all wages by check upon a special payroll account; that in the exercise of ordinary diligence when plaintiff's employee presented checks marked "cash for payroll" defendant was under a duty to investigate and to either refuse to cash such checks or communicate with plaintiff but negligently failed to do either and paid over funds to Wilkie on said checks.

Defendant filed a motion to dismiss the cause or in the alternative to strike the complaint. This motion was allowed in part and count 1 was stricken.

The defendant filed an answer with special defenses. The substance of these defenses are that on or about the first day of each month beginning with May 1951 and continuing through November 1952, defendant furnished plaintiff a statement of plaintiff's account together with canceled vouchers; that one of plaintiff's agents signed a receipt for each monthly statement; that by said receipt plaintiff agreed to examine the statement and vouchers and if not correct, to give notice and make a reclamation within 10 days; that plaintiff has given no notice nor made any reclamation within a reasonable time after delivery of statement and vouchers to its agent; that by virtue of which

plaintiff has waived or in the alternative is estopped from claiming upon the checks described in the complaint; that on numerous occasions plaintiff's account was overdrawn; that upon notice thereof plaintiff repaid such overdrafts; that such overdrafts should have been notice to plaintiff of an irregularity in its account; that Wilkie was held out to plaintiff to have full authority to draw checks on its account without limit as to amount or payee; that Wilkie had real, apparent or ostensible authority from plaintiff to issue checks payable to fictitious payees or to cash; that the payee in checks upon which plaintiff makes its claim was not the name of any person and were therefore bearer instruments and defendant was authorized to pay the amounts thereof to any person presenting the same; that any losses suffered by plaintiff on account of payment upon checks drawn by Wilkie are the results of plaintiff's negligence in failing to discover Wilkie's embezzlement for more than a year; in failing to examine monthly statements and vouchers and to notify defendant of errors; in failing to investigate the cause of overdrafts of its account and in failing to have sufficient audits of its books and accounts and to employ proper methods to safeguard the funds of the corporation.

The cause was tried on counts 3 and 5 by a jury which returned a verdict for the defendant. The court, after overruling plaintiff's post-trial motions, entered judgment on the verdict and this appeal followed.

Plaintiff's theory of the case is that the defendant owed the plaintiff as a depositor, a duty not to pay out its money or to debit its account for payments made to Wilkie on checks made payable to "cash for payroll."

The defendant takes the position that Wilkie, by virtue of the signature card filed with defendant and the authority held out by plaintiff's officers to the defendant, was authorized to sign checks to cash or other bearer instruments but that in any event plain-

tiff was guilty of such contributory negligence as to bar recovery.

Plaintiff urges that the trial court erred particularly in (1) refusing to strike defensive pleadings relating to fictitious payee; (2) refusing to give certain instructions tendered by plaintiff and in giving certain defense instructions; (3) in withdrawing the issue of bad faith from consideration by the jury; (4) admitting in evidence the receipts signed by plaintiff's agents upon delivery of the monthly statement and canceled vouchers; and (5) in instructing the jury as to contributory negligence without limiting such instruction to the negligence count of the complaint.

In considering the several errors assigned, there appears to be certain general observations which appropriately should be made. The authority of Wilkie to sign checks drawn on plaintiff's account is not in dispute. The signature cards applying to both the general and payroll accounts leaves no doubt on that subject. The subject of the controversy between the parties was the authority of Wilkie to cash the checks in question. The rights of third parties are not involved. Basically the issue is simple and may be stated thus: Was the defendant in failing to inquire of plaintiff as to whether Wilkie was authorized to receive the cash upon the checks guilty of such negligence as entitles plaintiff to recover?

It is obvious from an examination of the checks in question that the same are not payable to the order of a fictitious or nonexistent or living person not intended to have any interest in the same and do not qualify under Paragraph 3 of Section 9 of the Negotiable Instrument Law, Chapter 98 Illinois Revised Statutes 1953 which specifies the conditions under which instruments payable to fictitious persons are payable to bearer. These checks are for all intents and purposes made payable to cash. The addition of the words "for

payroll" may have served the convenient purposes of Wilkie in attempting to convince the teller that the proceeds of the checks was to be used in the course of plaintiff's business, but it did not make the payee a fictitious person. The drawing of checks to cash is a common practice and is employed for the purpose of withdrawing cash from a deposit account.

■ Checks thus drawn are in legal effect payable to bearer and are negotiable. Transfer thereof can be accomplished as it was in this case by delivery without endorsement. However, the fact that the checks thus delivered to defendant were insofar as their form was concerned, bearer instruments, does not render the defendant a holder in due course nor does such fact imply authority to sign the same. Because the checks in form met the requirements for negotiability of the Negotiable Instrument Law, it does not follow that the same were in fact negotiated.

■ The checks were presented by Wilkie to the defendant for payment and were not negotiated. Payment by the defendant destroyed the character of the checks as negotiable instruments and thereby transmuted the same into canceled vouchers. Such payment discharged the instruments and the defendant was not a holder thereof. 8 Am. Jur. Bills & Notes, Sec. 302; First National Bank v. United States National Bank, 100 Ore. 264, 197 Pac. 547.

Since the defendant was not a holder in due course it becomes obvious that any issue as to whether it qualified as such was not an issue for consideration by the jury. The checks were not negotiable but were cashed with funds from plaintiff's account.

In its answer defendant denied having any duty to ascertain whether Wilkie was authorized to execute checks payable to fictitious payees or to cash or bearer instruments and affirmatively alleged in substance that since such checks were bearer instruments the defend-

ant was authorized to pay the amount thereof to any person presenting the same. Plaintiff contends that any such affirmative allegation should have been stricken. The apparent basis for such argument is that the same amounted to reliance upon being a holder in due course. This appears to be only an allegation that the checks cashed by Wilkie were bearer instruments transferable without endorsement. Furthermore, we find nothing in the record indicating that plaintiff claimed to be a holder in due course.

█ Plaintiff complains of error by the trial court in giving an instruction (No. 40) which is in the language of Sec. 9 of the Negotiable Instrument Law [Ill. Rev. Stats. 1955, Ch. 98, § 29] and states the conditions under which an instrument is payable to bearer. The particular complaint is that the instruction was not applicable to the facts in the case and the giving thereof tended to confuse the jury. When the instructions are considered as a whole, we think it was made plain to the jury that the checks were in fact bearer instruments. Merely furnishing the jury with a description of the term "bearer instrument" without comment, as the court did, would not appear to be prejudicial to plaintiff's case. Likewise, we do not think the court erred in denying plaintiff's motion to strike the defensive pleadings in which the defendant referred to fictitious payees.

█ There was a failure of proof that Wilkie, as an agent of plaintiff, was a fiduciary within the meaning of Sec. 1, Fiduciary Obligations Act, (Par. 234, Chap. 98, Ill. Rev. Stat. 1953) and the court therefore correctly directed a verdict as to count 2. Sec. 8 of the above Act provides in substance that where a check is drawn pursuant to authority by a fiduciary upon his principal's account, the bank may pay such check without being liable to the principal unless the bank pays the same with actual knowledge that the fiduciary in drawing such check is committing a breach of his trust

242

or with knowledge of such facts that its action in paying the check amounts to bad faith. The evidence shows the defendant to have had no actual knowledge that Wilkie was employing the checks to embezzle his employer's money. Likewise, there appears to be no evidence of any facts known to the defendant or the existence of circumstances which would reasonably lead it to suspect that Wilkie was doing anything dishonest. The question of whether the defendant was guilty of negligence in paying the checks is quite another matter from that as to whether it did so in bad faith.

■ ■ Plaintiff also points to errors in the giving of instructions 39, 43 and 44. Instruction 39 informed the jury in effect that if Wilkie did certain acts within the apparent scope of his authority, the plaintiff was bound thereby. The rule of law stated in this instruction is well established and the giving of the same was not error in this case. Mechem on Agency, Secs. 83–84.

■ By instruction 43 the jury was informed that if it found plaintiff guilty of contributory negligence the plaintiff could not recover. By the language used therein it was made applicable to the facts in the case. The court did not err in giving the same.

■ By instruction 44 the court defined bearer instruments in terms of the evidence and instructed the jury that if it found that plaintiff had accepted the benefit of checks so drawn by Wilkie then such fact could be considered as evidence of Wilkie's authority to draw checks payable to bearer against Wilkie's account. Since there is evidence in the record that plaintiff did on numerous occasions cash checks in effect payable to bearer other than those in dispute, it was not error to give this instruction.

■ Plaintiff contends that the trial court erred in admitting in evidence the monthly receipts for statements and vouchers on the ground that incorporation therein of the requirement that depositors give notice

243

within 10 days amounted to placing a limitation on the right of depositor to make reclamation regardless of when an error in the account was discovered. We think the court's instruction to the jury that such provision has no legal effect sufficiently removed the objection made by plaintiff. It would appear that the receipts were properly admitted in evidence as material on the issue as to whether plaintiff exercised due care with regard to his deposit account.

Plaintiff does not argue that the verdict is against the manifest weight of the evidence, but bases its contention for reversal solely upon the ground that error by the trial court in its rulings upon evidence and instructing the jury prevented the plaintiff from receiving a fair trial. In this situation, the ultimate question confronting the reviewing court is whether there is a reasonable basis for the conclusion that but for the errors assigned, the verdict of the jury might have been different.

In none of the cases cited in the briefs did we find a factual situation which may be said to closely parallel that which is presented by the record herein. Plaintiff insists however that the exact legal question confronting us was before the court in People ex rel. Nelson v. Peoples Loan and Trust Co., 285 Ill. App. 552. In that case the Whitcomb Co. and one of its officers both carried accounts with the defendant bank in Rochelle, Illinois. Heim, who was authorized to sign checks drawn on the company account, wrote a check on his personal account for $25,000. At that time, he had on deposit only $44.24. When this check was presented to defendant in due course of business, it was not protested but held by defendant and Heim was notified of his overdraft. Heim then drew a check for $25,000 on the company account in a Chicago bank and forwarded same to defendant with directions to deposit it in his personal account. Without inquiry as to the validity

of the transaction, the defendant credited the proceeds of the check to Heim's account. The court held that since defendant knew when the check for $25,000 was presented that Heim had only a small balance in his account, and that since Whitcomb Co. was not indebted to the bank the latter should have inquired of Whitcomb Co. as to whether the transaction was legitimate.

There is a marked distinction between the facts in that case and those revealed by this record. Here Wilkie drew checks to cash for payroll in what appeared to be the usual course of business of his principal. The defendant did not take the proceeds of the checks and apply them to his account in the defendant bank. The defendant's teller did make inquiry of Wilkie as to the reason for plaintiff's drawing cash for payroll and received a plausible explanation under the circumstances. The teller's conversation with Wilkie amounted to an inquiry as to whether in the course of its business the plaintiff was changing its method of handling payroll payments. In view of the fact that the evidence indicates that Wilkie was in charge of plaintiff's banking business with defendant, it would appear reasonable to conclude that the teller did what a reasonably prudent bank employee would have done under similar circumstances. Therefore, we do not think that the rule announced in the Peoples Loan and Trust Co. case is helpful in resolving the questions raised on this appeal.

Plaintiff argues that defendant is guilty of a breach of its duty to plaintiff in failing to make an inquiry of plaintiff as to whether Wilkie was authorized to draw cash on the checks which he presented. Plaintiff does not indicate the person or persons to whom this inquiry should have been directed. Wilkie was one of three persons authorized to draw checks on plaintiff's account. The evidence shows that Wilkie in addition to his authority to write checks, had exclusive charge of the banking business of plaintiff with defendant.

245

Under these circumstances it would seem that an inquiry concerning the checks would reasonably and ordinarily be made of the person handling plaintiff's business with the bank and in this case that individual was Wilkie.

In this case the fact must not be overlooked that plaintiff owed the defendant the duty of exercising reasonable care and supervision over its bank account with defendant. Plaintiff admits that it failed to examine monthly statements of its account furnished by defendant during the whole period covered by Wilkie's embezzlements. It goes without saying that if such an examination had been made, it would have led to the discovery of Wilkie's wrongdoing. As to the duty of plaintiff in that regard, in Cosmopolitan State Bank v. Lake Shore Trust and Savings Bank, 343 Ill. 347, the court said: "A depositor of a bank who receives from it a statement of his account with its paid checks as vouchers is bound to examine the account and vouchers and report to the bank, without unreasonable delay, any errors which may be discovered." Similar language is found in Phillip v. First National Bank, 297 Ill. App. 498. Where, as in the instant case the irregular transaction went on for a period of approximately one and one-half years, the defendant might reasonably expect plaintiff to discover in a month or two if anything was wrong. Empire Trust Company v. Cahan, 274 U. S. 473.

The plaintiff's rights do not appear to have been prejudiced by the court's rulings on the admission of evidence. The object of review by this court is not to determine whether the record is completely free of error but to ascertain whether upon the trial there has been such error as might prejudice the rights of a party. Wilson v. C. & W. I. R. Co., 365 Ill. 405; People v. Storer, 329 Ill. 536. In this regard we find no error which can be considered as prejudicial to plaintiff's

246

rights and which would warrant the granting of a new trial.

It is the conclusion of this court, that the record herein is free of error prejudicial to plaintiff's rights and that upon the facts it is a reasonable assumption that no different verdict would be reached on another trial.

For the reasons herein indicated, the judgment of the circuit court is affirmed.

Affirmed.